TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00146-CR







Florencio Hernandez, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 99-0636, HONORABLE JON WISSER, JUDGE PRESIDING






 Florencio Hernandez appeals his conviction for capital murder for which he was
sentenced to life in prison. See Tex. Pen. Code Ann. § 19.03(a)(2) (West 1994). Hernandez
raises two issues on appeal. We affirm the conviction.


Factual Background


 A jury convicted appellant, Florencio Hernandez, of capital murder in January 2000
for the December 12, 1994 murder of Felix Rivera Gamez. Eduardo Hernandez was convicted
of capital murder in 1996 for Gamez's murder and sentenced to life in prison. (1) 

 On the morning of December 12, 1994, police found Gamez lying in a pool of
blood with his neck so severely cut that his head was almost separated from his body. Gamez's
clothes were partially removed and he was not wearing shoes or a jacket despite the cold weather. 
Marks in the dirt near Gamez's neck, indicating cutting motions, suggested that he had been
murdered at that location. After initially securing the crime scene, the police noticed bloody
footprints going away from the body. A K-9 unit eventually led the police to an area behind La
Tapatia, a vacant restaurant on East 6th street. Behind the restaurant, the police discovered a
transient campsite with several individuals standing around a burning barrel. Sometime later, the
police returned to the transient campsite to talk with the men. Officer Fuentes talked with three
intoxicated men and observed another passed out nearby. The unconscious man had cuts on the
outside of his hands and had blood on his clothing. The officers also observed a jacket with blood
on it and a pair of shoes. The officers determined the identities of the four men: Hernandez (the
unconscious man), Alfredo Quinones, Frank Guzman, and Antonio Cabrera. Appellant was not
at the transient camp. The police eventually learned that the victim lived only several blocks from
where he was killed. The men were arrested for public intoxication. 

 With the help of other officers, Sergeant Fuentes removed the men from the loading
dock behind La Tapatia. Fuentes discovered two storage rooms accessible from the loading dock. 
In one room, Fuentes saw bloody clothing, shoes and socks laying on mattresses. Gamez's jacket
was also found in the room. The police also found some tissue paper with blood on it. 

 The men were interviewed by the police. During the interviews, the men identified
another man named "Polo" who they claimed had been involved in the murder. Through photo
identification, the police learned that "Polo" was appellant. Appellant was arrested in early 1998
in California and extradited to Austin for trial. The jury convicted him of capital murder and the
trial court assessed punishment at life in prison in the Texas Department of Criminal Justice-Institutional Division. Appellant raises two issues on appeal.


Discussion


 In his first issue, appellant complains that the trial court erred by not instructing
the jury that Guzman and Cabrera were accomplices as a matter of law thereby requiring
corroboration of their testimony. The trial court instructed the jury that Hernandez was an
accomplice as a matter of law. However, Guzman's and Cabrera's status as accomplices was
submitted to the jury as a question of fact, allowing the jury to determine for themselves whether
Guzman and Cabrera were accomplices.

 An accomplice witness is one who participates with a defendant before, during or
after the commission of a crime. McFarland v. State, 928 S.W.2d 482, 514 (Tex. Crim. App.
1996). The participation must involve an affirmative act or omission by the witness to promote
the commission of that offense. Id. A person who is merely present at the scene of the offense
is not an accomplice. Blake v. State, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998). Having
knowledge about a crime and failing to disclose it or even concealing it does not make one an
accomplice. Id. A person is an accomplice if there is sufficient evidence connecting them to the
criminal offense as a blameworthy participant. Id. at 455. To determine whether a witness is an
accomplice, we examine the record for evidence of their participation in the crime. Id.

 For a witness to be an accomplice as a matter of law, the witness must be
susceptible to prosecution for the offense with which the accused is charged. McFarland, 928
S.W.2d at 514. Only when there exists no doubt or when the evidence clearly shows that a
witness is an accomplice as a matter of law is the trial court under a duty to so instruct the jury. 
Kutzner v. State, 994 S.W.2d 180, 187 (Tex. Crim. App. 1999); Blake, 971 S.W.2d at 455. If
the evidence is conflicting, and it is not clear whether the witness is an accomplice, the jury must
initially determine whether the witness is an accomplice as a matter of fact. Id. In such a
situation, the trial court should allow the jury to determine whether a witness is an accomplice
under instructions defining the term "accomplice." Id. 

 Appellant contends that the other three men--Hernandez, Guzman, and
Cabrera--committed the offense. As stated above, we must examine the record for evidence of
their participation in the crime. To be an accomplice, as a matter of law, the evidence must either
clearly show, or there must be no doubt that, a witness is an accomplice. That is, for the trial
court to be required to instruct the jury that Guzman and Cabrera were accomplices as a matter
of law, we must find either that the evidence leaves no doubt, or that it clearly shows, that they
were susceptible to prosecution for capital murder or a lesser included offense of the offense with
which the defendant is charged.

 Hernandez testified that he periodically stayed at the transient camp behind La
Tapatia. He knew three people at the camp: Guzman, Cabrera, and appellant. He testified that
on the night Gamez was killed, he and several other men were talking and drinking at La Tapatia,
including Guzman, Cabrera, and appellant. According to Hernandez, around 9:00 p.m. he and
appellant left the group to go to a bar. In one bar, the two met Gamez and the three drank
together until the bar closed. Hernandez also testified that Cabrera and Guzman were not with
him, appellant, and Gamez.

 When the bar closed, the three left together. According to Hernandez, appellant
pushed Gamez to the ground and appellant got on top of him. Hernandez beat up Gamez, took
his wallet, shoes, and socks. Hernandez testified that appellant unbuttoned Gamez's pants and
took his hat and jacket. According to Hernandez, appellant then got on top of Gamez and cut him
in the neck with a knife. The two returned to the transient camp. Appellant told the other men
that he had killed a man. Hernandez testified that appellant left the camp and told him to leave
the camp, too. Hernandez testified that Guzman and Cabrera did not accompany him and
appellant to the bar and did not otherwise meet up with the victim.

 Cabrera testified that he lived in the transient camp behind La Tapatia. Cabrera
testified that on the night of December 11, Hernandez and appellant were present and eventually
left together. According to Cabrera, appellant and Hernandez returned to the camp around 3:00
a.m. When they returned to the camp, appellant yelled that he had killed someone. Cabrera
testified that he had seen appellant with a folding knife on a previous occasion. Cabrera made an
in-court identification of appellant as the man he had seen at the camp with Hernandez. 

 Guzman testified that he lived behind La Tapatia in December 1994. He stated he
knew Cabrera and that he knew appellant and Hernandez by their nicknames. Guzman testified
that he did not "hang out" with appellant or Hernandez but that he had seen them around La
Tapatia. He testified that on the night he was arrested for public intoxication he was drinking with
several men in La Tapatia, including Hernandez and appellant. According to Guzman, Hernandez
and appellant left the group and returned later, saying they had killed someone by sticking a knife
in his neck. Guzman testified that appellant said the victim's body was near the train. The next
morning, Guzman observed Hernandez wiping something that looked like red paint off his shoes. 
Appellant was no longer at the camp. He also testified that appellant usually carried a knife. 
Guzman also made an in-court identification of appellant as a man who had been in the transient
camp behind La Tapatia. 

 Contrary to appellant's assertion that Hernandez, Cabrera, and Guzman committed
the crime, the evidence does not show Guzman's and Cabrera's involvement. The fact that
Guzman and Cabrera were present at the campsite does not establish their involvement with the
crime. No evidence suggested that they participated before the crime while drinking at the bar
or during the crime or after. Moreover, no physical evidence linked Guzman or Cabrera to
Gamez. Although both Guzman and Cabrera had blood on their clothing, the blood either could
not be identified as the victim's or could not be tested. The shoe prints found near the body did
not match the shoes worn by Cabrera or Guzman on the night of the murder. While the testimony
of Guzman and Cabrera may have been inconsistent on some points, the evidence as a whole does
not clearly establish that they were susceptible to prosecution. At best, the evidence showed some
doubt as to their involvement. Accordingly, we conclude that the trial court correctly instructed
the jury that they could find Guzman and Cabrera to be accomplices as a matter of fact. We
overrule appellant's first issue. 

 In his second issue, appellant argues that the evidence was factually insufficient to
support his conviction for capital murder. A factual sufficiency review presumes that the evidence
is legally sufficient to support the conviction. Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.
App. 1996). In a factual sufficiency review, the appellate court views all the evidence without
employing the prism of "in the light most favorable to the prosecution" and sets aside the verdict
only if a neutral review of all the evidence, both for and against the finding of guilt, demonstrates
that the proof of guilt is so obviously weak or greatly outweighed by contrary proof as to
undermine confidence in the jury's determination. Johnson v. State, 23 S.W.3d 1, 7, 11 (Tex.
Crim. App. 2000). As with a legal sufficiency review, the trier of fact is the sole judge of the
weight and credibility of the testimony and we cannot substitute our judgment for that of the trier
of fact. Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). 

 As highlighted above, the State's case turned primarily on the testimony of
Hernandez, Guzman and Cabrera. While their testimony was confusing at times, each testified
consistently to the significant points on the night of the murder. Hernandez admitted kicking and
robbing Gamez after the three left the bar. He admitted taking Gamez's wallet, shoes, and socks. 
However, Hernandez testified that appellant cut Gamez's throat with a knife. Guzman and
Cabrera testified that Hernandez and appellant left the camp together. When they returned,
appellant was talking about the murder. Gamez's jacket, shoes, and wallet were all found at the
transient camp. In addition, the medical examiner's description of Gamez's wounds, including
the neck wounds and bruising, was consistent with the description of the attack by Hernandez. 
The bloody tissue paper found at La Tapatia matched Gamez's blood. Gamez's jacket found at
the transient camp had both his blood and that of Hernandez. 

 Other evidence suggested the involvement of someone other than Hernandez. The
samples taken from Gamez did not match the suspects. The shoe prints around the body did not
match the shoe prints from shoes worn by Hernandez, Guzman, Quinones, or Cabrera on the
morning after the offense. 

 The defense identified for the jury several problems in the State's case. For
example, the State impeached Cabrera with his prior convictions for assault. The defense also
noted that although the police found the transient camp with several individuals present shortly
after discovering Gamez's body, they left without investigation. They returned to the camp
several hours later. Also, the police did not examine the barrel found at the camp used for
burning wood refuse to provide heat for the campers. The police also failed to fingerprint the
knife retrieved from the roof of La Tapatia. The defense also pointed out that the blood under
the victim's fingernails did not match appellant's. The blood taken from appellant was also
excluded as a donor from all the items the State was able to test. 

 While the biological evidence did not establish appellant's involvement in the
crime, other evidence did. The jury was free to believe the testimony of Cabrera, Guzman and
Hernandez. We conclude that the evidence is factually sufficient to support the conviction. We
overrule appellant's second issue. 


Conclusion


 Having overruled appellant's issues, we affirm the conviction. 



 ___________________________________________

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: April 12, 2001

Do Not Publish


1. To avoid confusion, we will refer to Florencio Hernandez as "appellant," and to Eduardo
Hernandez as "Hernandez." 


ng the crime or after. Moreover, no physical evidence linked Guzman or Cabrera to
Gamez. Although both Guzman and Cabrera had blood on their clothing, the blood either could
not be identified as the victim's or could not be tested. The shoe prints found near the body did
not match the shoes worn by Cabrera or Guzman on the night of the murder. While the testimony
of Guzman and Cabrera may have been inconsistent on some points, the evidence as a whole does
not clearly establish that they were susceptible to prosecution. At best, the evidence showed some
doubt as to their involvement. Accordingly, we conclude that the trial court correctly instructed
the jury that they could find Guzman and Cabrera to be accomplices as a matter of fact. We
overrule appellant's first issue. 

 In his second issue, appellant argues that the evidence was factually insufficient to
support his conviction for capital murder. A factual sufficiency review presumes that the evidence
is legally sufficient to support the conviction. Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.
App. 1996). In a factual sufficiency review, the appellate court views all the evidence without
employing the prism of "in the light most favorable to the prosecution" and sets aside the verdict
only if a neutral review of all the evidence, both for and against the finding of guilt, demonstrates
that the proof of guilt is so obviously weak or greatly outweighed by contrary proof as to
undermine confidence in the jury's determination. Johnson v. State, 23 S.W.3d 1, 7, 11 (Tex.
Crim. App. 2000). As with a legal sufficiency review, the trier of fact is the sole judge of the
weight and credibility of the testimony and we cannot substitute our judgment for that of the trier
of fact. Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). 

 As highlighted above, the State's case turned primarily on the testimony of
Hernandez, Guzman and Cabrera. While their testimony was confusing at times, each testified
consistently to the significant points on the night of the murder. Hernandez admitted kicking and
robbing Gamez after the three left the bar. He admitted taking Gamez's wallet, shoes, and socks. 
However, Hernandez testified that appellant cut Gamez's throat with a knife. Guzman and
Cabrera testified that Hernandez and appellant left the camp together. When they returned,
appellant was talking about the murder. Gamez's jacket, shoes, and wallet were all found at the
transient camp. In addition, the medical examiner's description of Gamez's wounds, including
the neck wounds and bruising, was consistent with the description of the attack by Hernandez. 
The bloody tissue paper found at La Tapatia matched Gamez's blood. Gamez's jacket found at
the transient camp had both his blood and that of Hernandez. 

 Other evidence suggested the involvement of someone other than Hernandez. The
samples taken from Gamez did not match the suspects. The shoe prints around the body did not
match the shoe prints from shoes worn by Hernandez, Guzman, Quinones, or Cabrera on the
morning after the offense. 

 The defense identified for the jury several problems in the State's case. For
example, the State impeached Cabrera with his prior convictions for assault. The defense also
noted that although the police found the transient camp with several individuals present shortly
after discovering Gamez's body, they left without investigation. They returned to the camp
several hours later. Also, the police did not examine the barrel found at the camp used for
burning wood refuse to provide heat for the campers. The police also failed to fingerprint the
knife retrieved from the roof of La Tapatia. The defense also pointed out that the blood under
the victim's fingernails did not match appellant's. The blood taken from appellant was also
excluded as a donor from all the items the State was able to test. 

 While the biological evidence did not establish appellant's involvement in the
crime, other evidence did. The jury