# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00146-CR

**Florencio Hernandez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 99-0636, HONORABLE JON WISSER, JUDGE PRESIDING

Florencio Hernandez appeals his conviction for capital murder for which he was sentenced to life in prison. *See* Tex. Pen. Code Ann. § 19.03(a)(2) (West 1994). Hernandez raises two issues on appeal. We affirm the conviction.

### Factual Background

A jury convicted appellant, Florencio Hernandez, of capital murder in January 2000 for the December 12, 1994 murder of Felix Rivera Gamez. Eduardo Hernandez was convicted of capital murder in 1996 for Gamez's murder and sentenced to life in prison.[1]

On the morning of December 12, 1994, police found Gamez lying in a pool of blood with his neck so severely cut that his head was almost separated from his body. Gamez's

---

[1] To avoid confusion, we will refer to Florencio Hernandez as "appellant," and to Eduardo Hernandez as "Hernandez."

clothes were partially removed and he was not wearing shoes or a jacket despite the cold weather. Marks in the dirt near Gamez's neck, indicating cutting motions, suggested that he had been murdered at that location. After initially securing the crime scene, the police noticed bloody footprints going away from the body. A K-9 unit eventually led the police to an area behind La Tapatia, a vacant restaurant on East 6th street. Behind the restaurant, the police discovered a transient campsite with several individuals standing around a burning barrel. Sometime later, the police returned to the transient campsite to talk with the men. Officer Fuentes talked with three intoxicated men and observed another passed out nearby. The unconscious man had cuts on the outside of his hands and had blood on his clothing. The officers also observed a jacket with blood on it and a pair of shoes. The officers determined the identities of the four men: Hernandez (the unconscious man), Alfredo Quinones, Frank Guzman, and Antonio Cabrera. Appellant was not at the transient camp. The police eventually learned that the victim lived only several blocks from where he was killed. The men were arrested for public intoxication.

With the help of other officers, Sergeant Fuentes removed the men from the loading dock behind La Tapatia. Fuentes discovered two storage rooms accessible from the loading dock. In one room, Fuentes saw bloody clothing, shoes and socks laying on mattresses. Gamez's jacket was also found in the room. The police also found some tissue paper with blood on it.

The men were interviewed by the police. During the interviews, the men identified another man named "Polo" who they claimed had been involved in the murder. Through photo identification, the police learned that "Polo" was appellant. Appellant was arrested in early 1998 in California and extradited to Austin for trial. The jury convicted him of capital murder and the

trial court assessed punishment at life in prison in the Texas Department of Criminal Justice-Institutional Division. Appellant raises two issues on appeal.

**Discussion**

In his first issue, appellant complains that the trial court erred by not instructing the jury that Guzman and Cabrera were accomplices as a matter of law thereby requiring corroboration of their testimony. The trial court instructed the jury that Hernandez was an accomplice as a matter of law. However, Guzman's and Cabrera's status as accomplices was submitted to the jury as a question of fact, allowing the jury to determine for themselves whether Guzman and Cabrera were accomplices.

An accomplice witness is one who participates with a defendant before, during or after the commission of a crime. *McFarland v. State*, 928 S.W.2d 482, 514 (Tex. Crim. App. 1996). The participation must involve an affirmative act or omission by the witness to promote the commission of that offense. *Id.* A person who is merely present at the scene of the offense is not an accomplice. *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998). Having knowledge about a crime and failing to disclose it or even concealing it does not make one an accomplice. *Id.* A person is an accomplice if there is sufficient evidence connecting them to the criminal offense as a blameworthy participant. *Id.* at 455. To determine whether a witness is an accomplice, we examine the record for evidence of their participation in the crime. *Id.*

For a witness to be an accomplice as a matter of law, the witness must be susceptible to prosecution for the offense with which the accused is charged. *McFarland*, 928

3

S.W.2d at 514. Only when there exists no doubt or when the evidence clearly shows that a witness is an accomplice as a matter of law is the trial court under a duty to so instruct the jury. *Kutzner v. State*, 994 S.W.2d 180, 187 (Tex. Crim. App. 1999); *Blake*, 971 S.W.2d at 455. If the evidence is conflicting, and it is not clear whether the witness is an accomplice, the jury must initially determine whether the witness is an accomplice as a matter of fact. *Id.* In such a situation, the trial court should allow the jury to determine whether a witness is an accomplice under instructions defining the term "accomplice." *Id.*

Appellant contends that the other three men Hernandez, Guzman, and Cabrera committed the offense. As stated above, we must examine the record for evidence of their participation in the crime. To be an accomplice, as a matter of law, the evidence must either clearly show, or there must be no doubt that, a witness is an accomplice. That is, for the trial court to be required to instruct the jury that Guzman and Cabrera were accomplices as a matter of law, we must find either that the evidence leaves no doubt, or that it clearly shows, that they were susceptible to prosecution for capital murder or a lesser included offense of the offense with which the defendant is charged.

Hernandez testified that he periodically stayed at the transient camp behind La Tapatia. He knew three people at the camp: Guzman, Cabrera, and appellant. He testified that on the night Gamez was killed, he and several other men were talking and drinking at La Tapatia, including Guzman, Cabrera, and appellant. According to Hernandez, around 9:00 p.m. he and appellant left the group to go to a bar. In one bar, the two met Gamez and the three drank

4

together until the bar closed. Hernandez also testified that Cabrera and Guzman were not with him, appellant, and Gamez.

When the bar closed, the three left together. According to Hernandez, appellant pushed Gamez to the ground and appellant got on top of him. Hernandez beat up Gamez, took his wallet, shoes, and socks. Hernandez testified that appellant unbuttoned Gamez's pants and took his hat and jacket. According to Hernandez, appellant then got on top of Gamez and cut him in the neck with a knife. The two returned to the transient camp. Appellant told the other men that he had killed a man. Hernandez testified that appellant left the camp and told him to leave the camp, too. Hernandez testified that Guzman and Cabrera did not accompany him and appellant to the bar and did not otherwise meet up with the victim.

Cabrera testified that he lived in the transient camp behind La Tapatia. Cabrera testified that on the night of December 11, Hernandez and appellant were present and eventually left together. According to Cabrera, appellant and Hernandez returned to the camp around 3:00 a.m. When they returned to the camp, appellant yelled that he had killed someone. Cabrera testified that he had seen appellant with a folding knife on a previous occasion. Cabrera made an in-court identification of appellant as the man he had seen at the camp with Hernandez.

Guzman testified that he lived behind La Tapatia in December 1994. He stated he knew Cabrera and that he knew appellant and Hernandez by their nicknames. Guzman testified that he did not "hang out" with appellant or Hernandez but that he had seen them around La Tapatia. He testified that on the night he was arrested for public intoxication he was drinking with several men in La Tapatia, including Hernandez and appellant. According to Guzman, Hernandez

and appellant left the group and returned later, saying they had killed someone by sticking a knife in his neck. Guzman testified that appellant said the victim's body was near the train. The next morning, Guzman observed Hernandez wiping something that looked like red paint off his shoes. Appellant was no longer at the camp. He also testified that appellant usually carried a knife. Guzman also made an in-court identification of appellant as a man who had been in the transient camp behind La Tapatia.

Contrary to appellant's assertion that Hernandez, Cabrera, and Guzman committed the crime, the evidence does not show Guzman's and Cabrera's involvement. The fact that Guzman and Cabrera were present at the campsite does not establish their involvement with the crime. No evidence suggested that they participated before the crime while drinking at the bar or during the crime or after. Moreover, no physical evidence linked Guzman or Cabrera to Gamez. Although both Guzman and Cabrera had blood on their clothing, the blood either could not be identified as the victim's or could not be tested. The shoe prints found near the body did not match the shoes worn by Cabrera or Guzman on the night of the murder. While the testimony of Guzman and Cabrera may have been inconsistent on some points, the evidence as a whole does not clearly establish that they were susceptible to prosecution. At best, the evidence showed some doubt as to their involvement. Accordingly, we conclude that the trial court correctly instructed the jury that they could find Guzman and Cabrera to be accomplices as a matter of fact. We overrule appellant's first issue.

In his second issue, appellant argues that the evidence was factually insufficient to support his conviction for capital murder. A factual sufficiency review presumes that the evidence

6

is legally sufficient to support the conviction. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In a factual sufficiency review, the appellate court views all the evidence without employing the prism of "in the light most favorable to the prosecution" and sets aside the verdict only if a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is so obviously weak or greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *Johnson v. State*, 23 S.W.3d 1, 7, 11 (Tex. Crim. App. 2000). As with a legal sufficiency review, the trier of fact is the sole judge of the weight and credibility of the testimony and we cannot substitute our judgment for that of the trier of fact. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).

As highlighted above, the State's case turned primarily on the testimony of Hernandez, Guzman and Cabrera. While their testimony was confusing at times, each testified consistently to the significant points on the night of the murder. Hernandez admitted kicking and robbing Gamez after the three left the bar. He admitted taking Gamez's wallet, shoes, and socks. However, Hernandez testified that appellant cut Gamez's throat with a knife. Guzman and Cabrera testified that Hernandez and appellant left the camp together. When they returned, appellant was talking about the murder. Gamez's jacket, shoes, and wallet were all found at the transient camp. In addition, the medical examiner's description of Gamez's wounds, including the neck wounds and bruising, was consistent with the description of the attack by Hernandez. The bloody tissue paper found at La Tapatia matched Gamez's blood. Gamez's jacket found at the transient camp had both his blood and that of Hernandez.

Other evidence suggested the involvement of someone other than Hernandez. The samples taken from Gamez did not match the suspects. The shoe prints around the body did not match the shoe prints from shoes worn by Hernandez, Guzman, Quinones, or Cabrera on the morning after the offense.

The defense identified for the jury several problems in the State's case. For example, the State impeached Cabrera with his prior convictions for assault. The defense also noted that although the police found the transient camp with several individuals present shortly after discovering Gamez's body, they left without investigation. They returned to the camp several hours later. Also, the police did not examine the barrel found at the camp used for burning wood refuse to provide heat for the campers. The police also failed to fingerprint the knife retrieved from the roof of La Tapatia. The defense also pointed out that the blood under the victim's fingernails did not match appellant's. The blood taken from appellant was also excluded as a donor from all the items the State was able to test.

While the biological evidence did not establish appellant's involvement in the crime, other evidence did. The jury was free to believe the testimony of Cabrera, Guzman and Hernandez. We conclude that the evidence is factually sufficient to support the conviction. We overrule appellant's second issue.

**Conclusion**

Having overruled appellant's issues, we affirm the conviction.


_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed:　April 12, 2001

Do Not Publish

9