HARVEY V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-205-CR

CHARLES M. HARVEY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 6 OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

A jury convicted Appellant Charles M. Harvey for the misdemeanor offense of graffiti, and the trial court assessed his punishment at one day’s confinement in the Tarrant County Jail and a $500 fine.  On appeal, Appellant challenges the legal and factual sufficiency of the evidence in support of the jury’s implicit finding that Appellant made the graffiti with an indelible marker. 
See
 
Tex. Penal Code Ann.
 § 28.08(a)(2) (Vernon 2003).  We affirm.

II.  Factual Background

Appellant was charged by information for intentionally and knowingly marking the wall of a restroom with an indelible marker without the effective consent of the property owner on September 12, 2000.  
See id
.  At trial the State presented evidence that over a period of time in 2000, employees at a work area of the Dallas-Fort Worth International Airport noticed a graffiti problem in one of the men’s restrooms, consisting of racially-motivated words and drawings.  Frank Baker, an employee at American Eagle, described the symbols and words in the graffiti as being racial slurs, offensive, and hateful.  Baker testified that the following had been written in the bathroom:  “I hate n*****s,” “Kill all n*****s,” and “Die n****r.”

Baker testified that all of the markings he saw were made with a black marker.  Efforts had been made to clean the walls with an abrasive hand soap used by mechanics; however, the markings could not be wiped off without removing the paint from the wall.  Consequently, American Eagle, which was responsible for maintaining the bathroom, adopted a policy of spray-painting over any graffiti found in the bathroom.

On September 12, 2000, American Eagle employee Michael Wright decided to monitor the bathroom to see if he could catch the person who was writing on the walls.  Wright testified that he went into the bathroom after it had been freshly painted and inspected the toilet, mirror, sink, paper towel dispenser, and garbage can.  Wright observed no graffiti in the bathroom.

Wright sat outside of the bathroom and watched each person who went inside.  After every person came out, Wright went inside and made a full inspection of the bathroom.  Wright testified that he followed three people, inspected the bathroom, and found no graffiti.  Appellant went inside the bathroom next, and Wright went in after Appellant had left.  Wright observed a marking on the paper towel dispenser that had not been in the bathroom before Appellant entered.  Wright reported the new graffiti to his supervisors.

The mark on the paper towel dispenser consisted of a symbol with “SWP” and “KKK” written underneath the symbol.  Wright testified that “SWP” stood for “Supreme White Power” and “KKK” stood for “Ku Klux Klan.”  Officer E. Rice, an officer with the DFW Department of Public Safety, saw the graffiti and described the markings as follows:

What I observed was it had an outer circle with a couple of triangles pointing at different directions that crossed each other, and then in the center it had the letters “KKK.”  And then, on the outside of that, inside the circle, it had “S” at the left corner, “W” at the bottom, and then “P” at the right corner, “SWP.”

Wright testified that he did not find a marking pen in the bathroom and did not actually see the pen used to mark the bathroom.  Baker testified that he knew Wright was monitoring the bathroom on September 12, 2000.  Baker testified that after Wright discovered the new marking, he too observed the graffiti and saw a circle with an emblem in it and the letters “SWP” and “KKK” written nearby.
(footnote: 1)
 Baker testified that the graffiti was done with the same black marker that had been used in the previous incidents.  At trial, Baker testified that he noted that Appellant had a black marker in his shirt pocket.  Baker conceded on cross-examination, however, that he did not mention seeing the black marker in Appellant’s pocket when he gave his statement to the investigating DPS officer.  Appellant was brought to trial solely for the September 12 incident, and after hearing all of the testimony and considering all of the evidence presented, a jury found Appellant guilty as charged in the information.

III.  Discussion

In two issues on appeal, Appellant complains that the evidence was legally and factually insufficient to support his conviction for the offense of graffiti.  Specifically, Appellant argues that there was no evidence showing that the graffiti was made with an “indelible marker” as alleged in the information.  
See id
. § 28.08(e).

A.  Applicable Law

A person commits an offense if, without the effective consent of the owner, the person intentionally or knowingly makes markings, including inscriptions, slogans, drawings, or paintings, on the tangible property of the owner with an indelible marker.  
Id
. § 28.08(a)(2).  Section 28.08 defines “indelible marker” to mean “a device that makes a mark with a paint or ink product that is specifically formulated to be more difficult to erase, wash out, or remove than ordinary paint or ink products.”  
Id
. § 28.08(e)(3).

B.  Legal Sufficiency

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  The standard of review is the same for direct and circumstantial evidence cases.  
Burden
, 55 S.W.3d at 613; 
Kutzner v. State
, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

C.  Factual Sufficiency

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. 
 Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id.
  In performing this review, we are to give due deference to the fact finder’s determinations. 
 Id.
 at 8-9; 
Clewis, 
922 S.W.2d at 136.  We may not substitute our judgment for that of the fact finder’s.  
Johnson
, 23 S.W.3d at 12.  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Johnson
, 23 S.W.3d at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

To make a determination of factual insufficiency, a complete and detailed examination of all the relevant evidence is required.  
Johnson
, 23 S.W.3d at 12.  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

D.  Application of Law to the Facts

Appellant contends that there was no evidence showing what type of marker or pen was used, and that no effort or tests were made to determine the difficulty of removing the marks in the bathroom.  In his brief, Appellant concedes that the State presented testimony regarding the difficulty of removing graffiti from the bathroom wall in other instances, before the date of the charged offense.  He argues, however, that there was no evidence about the marker or the difficulty of removing the marks Appellant made on September 12, 2000.

The State cites 
In re A.F.
 to support its contention that the evidence is sufficient to support the jury’s implicit finding that Appellant used an indelible marker.  No. 08-01-00441-CV, 2002 WL 1767567, at *2 (Tex. App.—El Paso Aug. 1, 2002, no pet.) (not designated for publication); 
see
 
Tex. R. App. P.
 47.7 (providing that unpublished cases may be cited, although they have no precedential value).  Similar to the present case, the marker in 
A.F
. was never recovered, a fact that A.F. argued rendered the evidence legally insufficient to prove that an indelible marker was used.  
A.F
., 2002 WL 1767567, at *2.  The court rejected this contention and stated,

Taken in the light most favorable to the verdict, the evidence showing that the markings were permanent and could not be erased or washed off establishes indirectly or circumstantially that the ink product in this marker is specifically formulated to be more difficult to erase, wash out, or remove than ordinary ink products.

Id.

It is undisputed that the State did not offer into evidence the specific marker used to commit the September 12 graffiti offense.  Contrary to Appellant’s assertions, however, the State presented evidence demonstrating that the marker Appellant used to draw on the bathroom paper towel dispenser was an “indelible marker,” as defined by section 28.08(e)(3) of the penal code.  
See
 
Tex. Penal Code Ann.
 § 28.08(e)(3).  Officer Rice testified that the graffiti “appeared to be written in a black permanent ink marker.”
(footnote: 2)  Wright also testified that the graffiti was made with a marker similar to a Sharpie, and he agreed that the marking was permanent.  Likewise, Baker testified that the graffiti was made with a black marker.  Thus, two of the State’s witnesses testified that the marker was 
permanent
, as opposed to being erasable, washable, or otherwise short-lasting.  
See
 
Webster’s Third New Int’l Dictionary 
1147 (1981) (defining ”indelible” as “that cannot be removed, washed away, or erased[;] that cannot be effaced or obliterated[;]
 
permanent, lasting”).

When Baker was asked what was used to make the graffiti in the September 12 offense, he testified, “The black marker, the same one they’d been using.”  The State offered testimony that prior attempts at cleaning the graffiti had failed, so American Eagle began spray-painting over all graffiti found in the restroom.
(footnote: 3)  In accordance with company policy, no one tried to remove the graffiti found on September 12, but instead spray-painted over the marks.  With this evidence, the State offered circumstantial proof that the September 12 graffiti was made with an ink product that was specifically formulated to be more difficult to erase, wash out, or remove than ordinary ink products.  
See
 
Tex. Penal Code Ann.
 § 28.08(e)(3).

We have reviewed the record extensively, and under the applicable standards of review, giving due deference to the fact finder’s determinations, we hold that the evidence was both legally and factually sufficient to support the jury’s implicit finding that Appellant used an indelible marker.  
See id
.  Accordingly, we overrule Appellant’s two issues.

IV.  Conclusion

Having overruled Appellant’s two issues, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL F: CAYCE, C.J.; GARDNER and WALKER, JJ.

PUBLISH

DELIVERED: August 27, 2003

FOOTNOTES
1:
State’s Exhibit One was a photograph of the graffiti Wright saw on the paper towel dispenser.  Other photographs were taken but mistakenly destroyed by the DPS prior to trial because, according to Officer Rice, the department thought the case against Appellant had been dismissed.

2:
This testimony is similar to that in 
A.F
., in which a police officer opined that the graffiti was made with an “indelible marker.”  
A.F
., 2002 WL 1767567, at *2.

3:
The day after the September 12 graffiti incident, the company tiled the bathroom walls from the floor to the ceiling because of the graffiti problem.