Richard William KUTZNER, Appellant,

v.

The STATE of Texas.

No. 72921.

Court of Criminal Appeals of Texas.

June 9, 1999.

Stephen Christopher Taylor, Galveston, for appellant.

Gail Kikawa McConnell, Asst. Dist. Atty., Conroe, Matthew Paul, State's Atty., Austin, for State.

## OPINION

MEYERS, J., delivered the opinion of the Court, in which McCORMICK, P.J., MANSFIELD, KELLER, PRICE, HOLLAND, JOHNSON, and KEASLER, JJ., joined.

Appellant was convicted of capital murder in September 1997. TEX. PENAL CODE ANN. § 19.03(a). Pursuant to the jury's answers to the special issues set forth in

Texas Code of Criminal Procedure article 37.071 §§ 2(b) and 2(e), the trial judge sentenced Appellant to death. Art. 37.071 § 2(g).[1] Direct appeal to this Court is automatic. Art. 37.071 § 2(h). Appellant raises 23 points of error. We will affirm.

## STATEMENT OF FACTS

The victim, Kathryn Harrison, owned and operated a real estate business in Montgomery County called Parade of Homes Realtors. Charles Divin worked as a realtor at the business. Shortly after the lunch hour on January 22, 1996, Divin went to the Parade of Homes office. Upon his arrival, he noticed the victim's car in the otherwise empty lot. Divin entered the office and went about his business, but did not see the victim. After a short period, Divin looked down the hallway and noticed that the light was on in the computer room. When he went to the room, Divin discovered the victim's body and called "911."

Montgomery County Sheriff's Deputy Jimmy Simmons was the first officer to arrive on the scene. Simmons found the victim lying face down with her wrists bound with red plastic-coated wire and her ankles locked in a cable tie, also known as "tie-wrap" or "flex cuff." A cable tie was also secured tightly around her neck. The victim's purse had been turned inside out and Divin noted a computer keyboard and a General Electric top-loading videocassette recorder were missing from the office.

Appellant and Roy Landry both subsequently became suspects in the investigation and on February 21, 1996, several detectives went over to Appellant's house. Appellant was not home at the time the detectives arrived, but one of the detec-

tives spotted and recovered a 30–inch white plastic tie-wrap from Appellant's driveway. Detective Ben Beall[2] then spoke with a neighbor and found out the type of vehicle Appellant drove and also obtained Appellant's wife's work phone number. Beall later learned that Appellant's vehicle had been repossessed and taken to A.W. Enterprises.[3] Subsequent investigation revealed that Cougan Hignight had gone to Appellant's residence on the night of February 9, 1996, to repossess Appellant's truck on behalf of A.W. Enterprises. As Hignight prepared the truck for travel, Appellant came out of his residence and confronted Hignight. Hignight offered Appellant several opportunities to remove any personal property he had in the truck, however, Appellant refused each opportunity and threatened to "sic" his dogs on Hignight. Appellant finally turned and walked back into his house and Hignight left with the truck and everything that was in it.

A.W. Enterprises received the truck on the next business day. Upon its delivery, Andy Wooten, the owner of the business and the person who had originally sold Appellant the vehicle, instructed that all personal items were to be removed from the truck and secured in a locked storage building located on the used car lot. A day or two later, Appellant called Wooten to inquire about the possibility of retrieving his personal belongings.

On February 22, 1996, Detective Beall went to Wooten's car lot looking for Appellant's truck and inquiring about whether any personal items had been left in the truck. Wooten instructed an employee to unlock the storage building and show the detective Appellant's belongings. Upon seeing Appellant's belongings, Beall contacted the Harris County District Attor-

---

1. Unless otherwise indicated all future references to Articles refer to Code of Criminal Procedure.

2. Beall was a Harris County Sheriff's Detective. On the day The victim's body was discovered, he called the Montgomery County Sheriff's Department to discuss the case be-

cause he was working on a very similar homicide in Houston.

3. The business is repeatedly referred to as "A. & W. Enterprises" in the record. This is apparently a mistake.

ney's Office for a search warrant allowing him to seize the items. After obtaining the warrant, Beall returned to the lot and seized several items including four plastic tie-wraps and some fourteen gauge red electrical wire. Appellant's fingerprints were discovered in two "glue gobs" found in Appellant's truck and on a piece of paper found among the items removed from the truck.

After executing the search warrant, Beall obtained a warrant for Appellant's arrest. At approximately 11:40 p.m. on February 22, 1996, Beall and other Harris County and Montgomery County officers went to arrest Appellant at his residence. When officers received no response to their knocks, they entered and searched for Appellant. Detective David Moore proceeded into the garage where he saw "some red electrical wire" which was similar to the type used in the victim's case. Moore later obtained a search warrant with which he returned and seized both the wire and two tie-wraps. The wire which was wrapped around the victim's wrists, the wire recovered at the used car lot, and the wire recovered from Appellant's home all bore the same identification numbers, the last of which was a classification number indicating the pieces of wire were all of the same type and had all been manufactured by Rome Cable of Rome, New York. This cable was not common in the Houston area.

In the meantime, other officers went to Roy Landry's residence. After obtaining a search warrant, officers entered Landry's trailer and seized a General Electric top loading videocassette recorder which was later identified as the one taken from the real estate office. Landry testified at trial that he had known Appellant for many years and had worked for him in the air conditioning business. Landry also told the jury that four or five months prior to the instant murder, Appellant suggested to him that he should rob an elderly lady who worked alone in an office. Landry asked Appellant why he did not commit the robbery himself if it was so easy and Appellant told him the office was too close to where he lived. Questioning further revealed that the Parade of Homes building was about a mile and a half from where Appellant lived.

Sometime during the last week in January, Appellant appeared at Landry's home with the top-loading videocassette recorder later recovered by law enforcement officers and a computer keyboard. Appellant subsequently retrieved the keyboard to give to "a computer lady that did work for Mike Covington." Mike Covington testified that sometime in the latter part of January or the first part of February, Appellant brought a computer keyboard to his home. However, Appellant retrieved the keyboard a week to a week-and-a-half later because Covington did not need it. Appellant was later arrested at Covington's home.

Lela Porch testified at trial that she had met Appellant through Mike Covington. In January 1996, Appellant fixed Porch's heat pump in exchange for an older model computer. About three weeks later, Appellant brought her a computer keyboard. Officers retrieved the keyboard approximately two weeks after Porch received it and it was later identified as the keyboard that had been stolen from the real estate office.

Remodeling contractor Dale Aikins testified that he had done some work for Appellant prior to the instant offense. Aikins told the jury that on at least three separate occasions during the time he was working for Appellant, Appellant commented that there were no serial numbers on items like tie-wraps and if you ever wanted to kill anybody, "this [tie-wrap] would be a good thing to use." Michael Ennis specialized in tool mark identification in his position as a forensic physical scientist with the Federal Bureau of Investigation laboratory in Washington, D.C.. Ennis examined the tie-wraps found around The victim's neck and ankles and determined that they had been cut by the

tin snips recovered from among Appellant's personal belongings at Wooten's auto lot.

At the punishment phase, the State offered evidence that appellant had served several years for an armed robbery in California committed in the late 1960's. The State also showed Appellant had been convicted for theft of stolen property in Johnson County, Texas, in May 1984, and had four convictions for aggravated robbery from 1985. Finally, the State proved that on January 5, 1996, just two and a half weeks prior to the commission of the instant case, Appellant murdered Rita Sheron van Huss in Harris County under similar circumstances. *See Kutzner v. State*, No. 72,805 (Tex.Crim.App. January 13, 1999) (not designated for publication).

## SUFFICIENCY OF THE EVIDENCE

In his first eight points of error, Appellant alleges the "admissible evidence" was legally and factually insufficient to support his conviction.[4] While Appellant sets out both the standard for a legal sufficiency review and the standard for a factual sufficiency review, he does not distinguish between the two in his analysis. We shall respond to all of the points together in the same general manner.

In reviewing the legal sufficiency of the evidence, this Court looks at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[5] *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In a factual sufficiency review, the Court views all the evidence without the prism of "in the light most favorable to the prosecution" and sets aside the verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996).

Appellant notes that no witness observed him enter or exit the real estate office at or near the time of the offense. Furthermore, no witness observed him inside the office or in its vicinity at or near the time of the offense. Appellant then argues that because there are no witnesses and there is no physical evidence showing Appellant's actual presence at the scene of the crime,[6] the State has failed to show Appellant personally caused the victim's death and thus the evidence is insufficient to support his conviction. Appellant's argument amounts to an assertion that circumstantial evidence is insufficient to support a conviction. Appellant is not correct in his assertion.

When reviewing a case comprised wholly of circumstantial evidence, the standard of review is the same as it is for reviewing cases in which direct evidence exists. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995); *Wilson v. State*, 863 S.W.2d 59, 65 (Tex.Crim.App. 1993). Circumstantial evidence, by itself, may be enough to support the jury's verdict. *See Smith v. State*, 965 S.W.2d 509, 515 (Tex.Crim.App.1998).

In the instant case, the State showed Appellant lived only a mile and a half from the scene of the crime and had

---

4. Specifically, Appellant asserts the evidence was factually and legally insufficient to prove that Appellant caused the victim's death, intentionally caused the victim's death, and robbed or attempted to rob the victim. Appellant alleges each of these points separately, but presents no argument specific to any of these points.

5. We note that a sufficiency review is not just limited to the "admissible evidence" in the case. Rather, a reviewing court considers all of the evidence, both admissible and inadmissible. *Johnson v. State*, 967 S.W.2d 410, 412 (Tex.Crim.App.1998).

6. Such as fingerprints, for example. Appellant also points out there was no testimony that his fingerprints were found on the snips that cut the tie-wraps.

suggested a friend rob the victim. Appellant told his friend that he would do it but he lived too close. The victim was found bound with red electrical wire and tie-wraps of the same sort found in Appellant's garage and among the personal belongings found in his truck. All of the wire had the same classification number and manufacturer's markings of an obscure brand manufactured in Rome, N.Y. and uncommon to the area. The tin snips found among Appellant's belongings were shown to have cut the tie-wraps which bound the victim. A document found in the same canvas bag with the tin snips bore a latent print of Appellant's right thumb. In addition, some months before the crime Appellant had mentioned to a man doing some repairs for him that tie-wraps would be good for killing people. Of the items identified as missing from the victim's office, one witness testified that Appellant brought him the videocassette recorder and another testified that Appellant brought her the computer keyboard.

Given this evidence, it was rational for the jury to believe beyond a reasonable doubt that Appellant was guilty of the capital murder of the victim. *Jackson, supra.* The verdict was also not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Santellan* and *Clewis, supra.* **Appellant's first eight points of error are overruled.**

Appellant posits in points of error nine through thirteen that the trial court erred in failing to suppress the evidence seized from A.W. Enterprises. Appellant argues this evidence was illegally seized, in violation of the Fourth and Fourteenth Amendments to the United States Constitution; Article I, Sections 9 and 19 of the Texas Constitution; and Article 38.23(a) of the Texas Code of Criminal Procedure. Appellant asserts he had a reasonable expectation of privacy in the personal property removed from the repossessed vehicle and stored under lock and key at A.W. Enterprises for his benefit.[7]

As the facts set out previously show, when Hignight went to repossess Appellant's truck on February 9, 1996, Appellant confronted him. Although Hignight offered Appellant several opportunities to remove any personal property he had in the vehicle, Appellant refused every offer. Notwithstanding Appellant's refusal to collect his personal property from the truck, Wooten instructed the property be removed and placed in a locked storage shed on the property of the car business.[8] Within a day or two of the repossession, Appellant called the company inquiring about the possibility of retrieving his property.[9] On February 22, 1996, Detective Beall of the Harris County Sheriff's Department visited A.W. Enterprises and inquired about any personal property that may have been left in Appellant's repossessed truck. Wooten voluntarily gave Beall permission to search the storage shed and instructed an employee to take Beall to the shed and unlock it. When the employee pointed out the items that had

7. Appellant does not distinguish federal protections from those afforded by the state, therefore, all of the points will be discussed together. *Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.1991).

8. Wooten's retrieval of the personal property from the truck was authorized by the terms of the sales contract pursuant to which Appellant originally bought the truck. This contract provided that upon repossession of the truck, the seller was entitled to take possession of any personal property left in the vehicle and hold it for the buyer provided that the seller notify the buyer within fifteen days of discovering the property. According to the contract, the notice to the buyer should state that the buyer could identify and claim the property at a specified location at specified reasonable times within thirty (30) days following the delivery of the notice. If the property were not claimed within the specified period, the seller could dispose of it in any commercially reasonable manner.

9. Appellant did not appear to retrieve his property. His wife retrieved Appellant's property after police seized the items potentially related to the murder of The victim and van Huss.

come from Appellant's truck, Beall saw in plain view white plastic tie-wraps and red electrical wire similar to the wraps and wire used in the instant case. Upon seeing these items, Beall did not disturb them, but withdrew from the shed and proceeded to obtain a search warrant. Pursuant to the search warrant, Beall returned and seized several of the items. Appellant specifically complains of the initial search of the storage shed, which search then formed the basis of the search warrant.[10]

For the sake of argument in analyzing these points we will assume, without deciding, that Appellant did not abandon his property when he refused to collect it from the truck prior to the truck's repossession, see Hawkins v. State, 758 S.W.2d 255, 258 (Tex.Crim.App.1988), and that Appellant had standing to complain of the search, although he had no apparent right to enter the A.W. Enterprises storage shed where his belongings were stored.

■■■ Appellant correctly notes that the United States Constitution guarantees the right of the people to be secure against unreasonable searches and seizures. It is also well-settled under the Fourth and Fourteenth Amendments that a search without a warrant based upon probable cause is per se unreasonable. Horton v. California, 496 U.S. 128, 133 n. 4, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); Hulit v. State, 982 S.W.2d 431, 434 (Tex.Crim. App.1998). However, this concept is subject to some specifically established and well-delineated exceptions. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Garcia v. State, 887 S.W.2d 846, 851 (Tex.Crim.App.1994), cert. denied, 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995). One exception to the warrant and probable cause requirements is a search that is conducted pursuant to consent. See Schneckloth v. Bustamonte,

412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Garcia, 887 S.W.2d at 851. A third party may properly consent to a search when he has control over and authority to use the premises being searched. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Garcia, 887 S.W.2d at 851.

■■ As the owner of the car lot, Wooten had control over, authority to use, and in fact was using, the storage shed on his business property. Thus Wooten could properly consent to a search of the storeroom. Garcia, 887 S.W.2d at 851 ("A third party may properly consent to a search when he has control over and authority to use the premises being searched.") While Wooten may not have had the authority to consent to search inside particular boxes in the storeroom, this question is not an issue under the facts presented in this case because Appellant's possessions were in open containers, visible to anyone standing in the doorway to the shed.

By his authority, Wooten had the storage shed unlocked for Detective Beall who simply looked inside. When appellant's belongings were pointed out, Beall looked them over without touching them. Upon seeing certain items which were possibly related to the instant offense, Beall withdrew from the shed and obtained a warrant. Given that Wooten had authority to allow Beall to look inside the shed, and the items at issue were in plain view, Beall did not conduct an illegal search. Vuong v. State, 830 S.W.2d 929 (Tex.Crim.App.), cert. denied, 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992). **Points of error nine through thirteen are overruled.**

■■ In his fourteenth and fifteenth points of error, appellant alleges the trial court erred in admitting evidence over his objection which was seized in Harris County, but later removed to Montgomery

---

10. Appellant does not complain about the accuracy or propriety of the search warrant; he complains only of Beall's initial viewing of Appellant's belongings, facilitated by Wooten, which provided probable cause for the issuance of the search warrant. Our analysis will be limited to this point.

County without order and for use in a criminal proceeding against Appellant, in violation of Articles 18.10 and 38.23. Article 18.10 provides in pertinent part:

> Upon returning the search warrant, the officer shall ... deliver to the magistrate a copy of the inventory of the property taken into his possession under the warrant. The officer who seized the property shall retain custody of it until the magistrate issues an order directing the manner of safekeeping the property. The property may not be removed from the county in which it was seized without an order approving the removal, issued by a magistrate in the county in which the warrant was issued; provided, however, nothing herein shall prevent the officer, or his department, from forwarding any item or items seized to a laboratory for scientific analysis.

Article 38.23 states that no evidence obtained in violation of law shall be admitted in evidence against the accused on the trial of any criminal case.

Appellant points to five State's Exhibits: exhibits 7 and 8 are photographs of the computer keyboard stolen from the victim; exhibits 31 and 32 are photographs of some of the items sitting in Wooten's storage shed, including some of the property removed from Appellant's repossessed truck; and exhibit 41 is a photograph of a house. Although a couple of references were made to the "item[s] depicted in" the photographs, the photographs were the subject of the objections and are ultimately admitted into evidence by the trial court.

The photographs complained-of are the work product of the officers investigating the instant offense and are not items which were seized pursuant to a search warrant. Hence, Articles 18.10 and 38.23 do not apply. **Points of error fourteen and fifteen are overruled.**

In points sixteen and seventeen, Appellant submits the trial court erred in failing to instruct the jury that Landry was an accomplice as a matter of law and thus subject to the accomplice witness rule.[11] An accomplice witness is one who participates with a defendant before, during, or after the commission of a crime. *McFarland v. State,* 928 S.W.2d 482, 514 (Tex.Crim.App.1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). The participation must involve an affirmative act committed by the witness to promote the commission of that offense. *Id.* In order to be an accomplice as a matter of law, the witness must be susceptible to prosecution for the offense with which the accused is charged. *Id.* Only when there exists no doubt or when the evidence clearly shows that a witness is an accomplice witness as a matter of law is the trial judge under a duty to so instruct the jury. *Blake v. State,* 971 S.W.2d 451, 455 (Tex.Crim.App.1998).

Appellant claims that Landry is an accomplice as a matter of law because: (1) Landry's name was endorsed on the back of the money order at issue in the similar Harris County capital murder case; (2) Landry was in possession of the videocassette recorder taken from the victim in the instant case; and (3) during the investigation of this case, Landry became a suspect and was arrested and charged with capital murder. We first note that Landry was never indicted for the instant offense. Although he was initially suspected and even charged with the offense, officers dismissed the charges and released him after they investigated his statements.

When Landry originally received the videocassette from Appellant, there is no indication that he knew it was stolen or otherwise knew anything about the instant crime. When Landry later found out that police detectives wanted to talk to Appel-

---

11. Article 38.14 of the Texas Code of Criminal Procedure provides:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

lant, he began to suspect the video recorder might have something to do with it. A witness is not an accomplice witness merely because he may have known of an offense and did not disclose it or even concealed it. *McFarland, supra.*

■ Finally, although the State presented evidence in the instant case of a money order with Landry's name written on it, this money order had been taken in another offense and no evidence existed that Landry ever even possessed the instrument. Even if he had, complicity with an accused in the commission of another offense does not make a witness an accomplice in the offense for which the accused is on trial. *Id.* There is no evidence that Landry committed any affirmative act to promote the commission of the instant crime either before, during, or after the offense. Therefore, Landry was not an accomplice as a matter of law and the trial court did not err in failing to so charge the jury. **Points of error sixteen and seventeen are overruled.**

■ In his eighteenth through twenty-second points of error, Appellant asserts the trial court erred in failing to include an instruction in the punishment charge informing the jury that appellant would have to serve forty years before he would become eligible for parole pursuant to Article. 42.18 § 8(b)(2). It is not error for the trial court to refuse to instruct the jury on the minimum eligibility requirements for parole in a capital case. *See McGinn v. State,* 961 S.W.2d 161, 166 (Tex.Crim. App.), *cert. denied,* —— U.S. ——, 119 S.Ct. 414, 142 L.Ed.2d 336 (1998). **Points of error eighteen through twenty-two are overruled.**

In his twenty-third point of error, Appellant asserts that the trial court gave an erroneous instruction in the punishment jury charge concerning the burden of proof on extraneous offenses. The rele-

vant portion of the punishment charge established a "clear proof" standard as a precondition for the jury's consideration of extraneous offenses:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony unless you find and believe by clear proof that the defendant committed such other offenses, if any were committed.

Appellant contends that the instruction should have stated that in order for the jury to use evidence of extraneous offenses, the jury must believe beyond a reasonable doubt that the defendant committed those offenses. Art. 37.07 § 3(a). Appellant contends that (1) he was entitled to receive a reasonable doubt instruction on extraneous offenses, and (2) the submitted instruction erroneously lessened the State's burden of proof.

■ Appellant cites non-capital [12] case-law as authority for his claims. Non-capital cases are governed by Article 37.07, which requires that extraneous offenses be proven beyond a reasonable doubt. *See* Article 37.07 § 3(a). Capital cases are governed by Article 37.071, which contains no such requirement. *See* Article 37.071 § 2(a). We have held that, so long as the jury has been properly instructed concerning the burden of proof with regard to the special issues, the trial court does not err in failing to submit in the punishment jury charge a separate instruction on the burden of proof on extraneous offenses. *Skinner v. State,* 956 S.W.2d 532, 546 (Tex. Crim.App.1997), *cert. denied* —— U.S. ——, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998); *Jones v. State,* 944 S.W.2d 642, 654 (Tex.Crim.App.1996), *cert. denied* —— U.S. ——, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997).

**12.** "Non-capital" is used here to refer to non-capital cases and capital cases in which the death penalty is not sought.

Although a burden of proof instruction was not authorized by law, the instruction submitted did not lessen the State's burden. The State has the burden of proof on punishment issues, and the evidence offered to support the special issues is subsumed within that burden. To the extent there are questions concerning whether Appellant actually committed the extraneous offenses, the jury can take such questions into account in deciding the special issues. The trial judge performs a limited gatekeeping function with respect to extraneous offenses: before allowing the admission of such offenses into evidence (and hence their placement before the jury), the trial judge must determine that there is clear proof that the offenses were committed and that the defendant was the perpetrator. *Burks v. State*, 876 S.W.2d 877, 909 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); *Kemp v. State*, 846 S.W.2d 289, 307 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). By requiring a similar gatekeeping function from the jury, the punishment jury charge in this case imposed an additional hurdle upon the State that the law does not require. Appellant, however, cannot complain about a gratuitous instruction that served only to benefit him. **Point of error twenty-three is overruled.**

Finding no reversible error, we affirm the judgment of the trial court.

WOMACK, J., concurred in the resolution of points of error fourteen and fifteen and joined the remainder of the opinion.