Motion for Rehearing Overruled; Affirmed; Opinion of
May 17, 2005, Withdrawn; Substitute Memorandum Opinion filed July 14, 2005.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00226-CR

____________

 

TYRONE DENARD
GRAYSON,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 230th
District Court

Harris County, Texas

Trial Court Cause No. 974,022

 



 

S U B S T I T U T E   M E M O R A N D U M   O P I N I O N   

Appellant, Tyrone Denard Grayson, appeals
his conviction for the March 2003 murder of Leonard Bledsoe, for which a jury
sentenced him to life in prison.  In his
sole issue, appellant claims the evidence is insufficient to support his
conviction.  In response to appellant=s motion for
rehearing, we withdraw the opinion issued in this case on May 17, 2005, and we
issue the following opinion in its place. 
We overrule appellant=s motion for
rehearing.  Because all dispositive
issues are clearly settled in law, we issue this memorandum opinion.  Tex.
R. App. P. 47.1.  We affirm.








Background

On March 13, 2003, Melvin Nickerson
returned to his home at 8434 Carolwood to find his back kitchen door kicked in
and $800.00 in cash missing.  Nickerson=s brother-in-law,
Alfred Price, came to Nickerson=s house to borrow
money shortly after Nickerson discovered the burglary. Workers roofing a house
behind Nickerson=s told Nickerson and Price that they had
seen a tall individual in a hooded sweatshirt with his hair in braids enter the
house.  The two men then saw appellant
drive by the street behind Nickerson=s; Price
recognized appellant and told Nickerson that, given the workers= description and
his knowledge of appellant, he suspected appellant of the burglary.  Several of Nickerson=s cousins then
gathered at Nickerson=s house upon hearing of the theft.

According to Nickerson, his gathered
family talked him into going to appellant=s mother=s house in search
of appellant.  He returned home after his
search came up empty.  By that time, the
number of congregated family members and friends had increased.  The group included Price, Xavier Hunter,
Angelo Laws, Sylvester Bonner, Leonard Bledsoe, and Edwin Bledsoe.  None of those in the group, including
Nickerson, was armed at any time.  The
group was outside, drinking beer and discussing the burglary, when several cars
pulled up, blocking the street and driveway. 
Appellant and several other individuals got out of the cars.  Appellant angrily stated that he had heard
that the group had been looking for him. 
He walked toward the house, whereupon Bonner, Hunter, Laws, and Price
walked out to meet him.  








A brief discussion regarding the burglary
then occurred, escalating to the point at which appellant stepped back, yelled,
AI ain=t got to take this
shit no more,@ reached into his back waistband, and drew
a gun.  Almost all of the eyewitnesses
turned and ran from the ensuing gunfire. 
At the end of the gun shots, Leonard Bledsoe was discovered to have been
shot in the chest.  Witnesses at the
scene of the shooting called 9‑1‑1, but Bledsoe died en route to
the hospital.  None of the witnesses
actually saw appellant shoot Leonard Bledsoe. 
Appellant was also injured in the gun battle, although he did not seek
medical treatment for his injury. 
Appellant, who had fled the scene, was later arrested and charged with
the murder of Leonard Bledsoe.

At trial, a ballistics expert testified
that, from casings and fragments recovered from the scene, at least three
different weapons were used during the gunfight.  One witness testified that he saw appellant
with a gun; other witnesses testified that they did not see whether he had a
gun since they turned to run once he made a motion as if to reach for a
weapon.  The ballistics testimony offered
at trial also showed that the shots were fired in the direction of Nickerson=s house, 8434
Carolwood, away from the street.  

In its charge, the court instructed the
jury that it could find appellant guilty of murder as a principal, as a party,
or under the theory of transferred intent. 
Appellant brings this appeal, claiming that since the jury was not
instructed that he could be found guilty as a party to transferred intent, the
evidence was insufficient to support his conviction under any of the other
theories submitted to the jury.  We
disagree.

Legal and Factual Sufficiency

We utilize the normal standards in
conducting our sufficiency review.  Jackson
v. Virginia, 443 U.S. 307 (1979); King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000) (legal sufficiency standards); Zuniga v. State,
144 S.W.3d 477, 484 (Tex. Crim. App. 2004) (factual sufficiency
standards).  When the record contains
evidence that is circumstantial in nature, the standard of review is the same
as it is for reviewing direct evidence.  See
Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).  Indeed, circumstantial evidence alone may be
sufficient to support a finding of guilt.  Id.  The
charge, to which appellant made no objection, authorized the jury to convict
appellant of murder: as a principal under penal code section 19.02(b)(1) or
19.02(b)(2); as a party under section 7.02(a)(2); or under the theory of
transferred intent under section 6.04(b)(2). 
If a jury returns a general verdict and the evidence is sufficient to
support a finding of guilt under any of the allegations submitted, the verdict
will be upheld.  Alvarado v. State,
912 S.W.2d 199, 225 (Tex. Crim. App. 1995). 









Appellant claims that, because no theory
other than his culpability as a party to transferred intent is supported by
sufficient evidence, and the jury was not instructed on that theory, the
evidence is legally and factually insufficient to support his conviction.  We find that the evidence is sufficient, both
legally and factually, to support appellant=s conviction under
the charge as given to the jury.

Testimony at trial indicates that the
confrontation between appellant and the group consisting of Bonner, Hunter,
Laws, and Price took place in the street between Nickerson=s house, 8434
Carolwood (A8434@), and his
neighbor=s house, 8426
Carolwood (A8426@).[1]  Melvin Nickerson=s brother-in-law,
Angelo Laws, testified that he saw appellant pull a gun out from his back
waistband.  Laws did not see appellant
actually fire the gun because, once he saw appellant draw his weapon, he
immediately turned and ran.  Laws did
testify, however, that, as soon as he turned to run, he heard Aover three dozen@ gunshots
fired.  Other witnesses, including Melvin
Nickerson, Edwin Bledsoe (Leonard=s brother), Xavier
Hunter,  and Alfred Price, testified that
they did not see appellant with a gun because, once appellant made a motion as
if to pull a weapon, they turned and ran. 
They did testify that they heard gunfire coming from where appellant had
been standing.  

The forensic evidence adduced at trial
showed that all of the shots fired during the shooting, including the shot that
killed Leonard Bledsoe, came from a gun or guns fired by appellant and/or his
companions, who were standing around and behind him.  Carl Stein, the State=s ballistics
expert, testified that the bullet that killed Leonard Bledsoe came from a gun
from which shell casings were found in the street in front of 8426
Carolwood.  Three bullets or bullet
fragments from the same weapon were found in close proximity to where Bledsoe
was found to have been shot.  Houston
Police Department detectives found two other groups of shell casings that were
later determined to be from two different weapons in the same area in front of
8426 and between 8426 and 8434. 








Appellant claims that the forensic
evidence, when considered with the testimony setting the location of the fight,
proves that someone other than he fired the fatal shot.  According to the forensic testimony, the bullet
that killed Leonard Bledsoe came from 160 feet away from Nickerson=s driveway, but
appellant claims that someone other than appellant fired the fatal shot.  The testimony adduced at trial, however,
controverts appellant=s version of the facts.  Some witnesses placed the confrontation in
the street in front of Nickerson=s neighbor=s house; other
witnesses marked the location of the confrontation and its actors on an exhibit
shown to the jury.  We do not have that
exhibit on appeal.  As a result, on this
record, we cannot say that the forensic evidence conflicts with testimony
explaining the complainant=s location.

A firearm is a deadly weapon per se;
intent to kill may be inferred when a defendant uses a deadly weapon in a
deadly manner.  Adanandus v. State,
866 S.W.2d 210, 215 (Tex. Crim. App. 1993). 
The jury had before it detailed explanations of the location of the
actors.  The above evidence that
appellant had, or pulled, a weapon and that shots were fired from a place at
which appellant had been standing supports his conviction as a principal.  It also supports a conviction under the
theory of transferred intent.  If
appellant can be assumed to have been shooting at Bonner, Hunter, Laws, and/or
Price, then the only difference between what actually occurred and what
appellant desired, contemplated, or risked is that a different person, namely,
Leonard Bledsoe, was killed.  See Tex. Pen. Code Ann. ' 6.04(b)(2)
(Vernon 2003).  








Therefore, as the State points out, while
no evidence exists to show exactly who fatally shot Leonard Bledsoe, the jury
rationally could infer that, because the evidence showed that either appellant
or his accomplices used one or more deadly weapons in a deadly manner, the
fatal shot was fired either by appellant or those with him.  Because the jury is the exclusive judge of
the credibility of the witnesses and the weight to be given their testimony, we
conclude that a rational trier of fact could have found the elements of the
offense beyond a reasonable doubt.  See
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  The evidence is therefore legally sufficient
to support appellant=s conviction.  See King, 29 S.W.3d at 562.  

We also conclude that a neutral review of
the evidence does not demonstrate that the proof of guilt is so obviously weak
as to undermine confidence in the jury=s
determination.  See Zuniga, 144
S.W.2d at 483-84.  Neither is the proof
of guilt greatly outweighed by any contrary proof: appellant=s defense
consisted of three witnesses who testified that they saw him at AThe Cut@ barber shop, his
place of work, the day of the crime.  The
witnesses testified that appellant had been at work, but left in the early
afternoon, returning to the shop later in the day.  The witnesses stated that appellant showed
them where he had been shot in the leg and then quickly left.  The mother of appellant=s two children
also testified that appellant did not pick their daughter up at school that day
and that, after appellant returned home, she treated his wound with hydrogen
peroxide and a bandage.  We find that the
evidence is factually sufficient to support appellant=s conviction.  Id. 


Because we find that sufficient evidence
exists to support appellant=s conviction under
the charge as given, we conclude that the court did not err in failing to
charge the jury under the theory of appellant being a party to transferred
intent.  See Alvarado, 912 S.W.2d
at 225.

Appellant=s single point of
error is overruled.

We affirm the
judgment of the trial court.

 

 

/s/      Adele
Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Substitute Memorandum Opinion filed July 14, 2005.

Panel consists of
Chief Justice Hedges and Justices Fowler and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).

 











[1]  The two houses
are on the same side of the street.