Reversed and Remanded and Majority and Dissenting Opinions filed June
29, 2006









Reversed and Remanded and Majority and Dissenting
Opinions filed June 29, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00031-CR

____________

 

CALVIN JOSEPH SMITH, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 

 

On Appeal from the 278th District Court

Harris County, Texas

Trial Court Cause No. 20863-C

 

 

 

D I S S E
N T I N G   O P I N I O N

            I
respectfully dissent to the majority’s conclusion that the trial court
erroneously considered extraneous offenses in assessing appellant’s
punishment.  The majority finds that, despite “evidence that [the victim] was
horribly mistreated over a period of time,” the evidence nonetheless fails to
support a conclusion that appellant knew about the abuse but failed to act.  Because
there was sufficient circumstantial evidence to support such a finding, I
believe the majority errs in reversing and remanding on this issue.

            A defendant
recklessly endangers a child when he “intentionally, knowingly, recklessly, or
with criminal negligence, by act or omission, engages in conduct that places 








a child . . . in imminent
danger of death, bodily injury, or physical or mental impairment.”  Tex. Penal Code Ann. § 22.041(c) (Vernon Supp. 2005).  Such an offense is a state jail felony.  Id. §
22.041(f).  In this case, the trial court assessed punishment; thus, in its
role as factfinder, the trial court could consider any extraneous offense
evidence it found the State proved beyond a reasonable doubt.  See Williams
v. State, 958 S.W.2d 844, 845 (Tex. App.—Houston [14th Dist.] 1997, pet.
ref’d). 

            The victim in
this case was a five-month-old child.  Although the majority correctly notes
that Sheila Hugo, the PSI’s author, could not pinpoint appellant’s last contact
with the victim before November 19, 2000, testimonial evidence from appellant’s
own witnesses indicates he was regularly involved with her.[1] 
Moreover, the record shows she was in his custody on November 19, 2000 for at
least eight hours before he took her to the hospital.  Sometime during or
immediately before this period, the victim sustained severe abdominal injuries
that ultimately caused her death.  According to the PSI, which summarized the
victim’s medical records, these injuries “would have been extremely painful and
the child would have been crying ‘inconsolably.’”  The evidence also
establishes that in the weeks before the victim died, she suffered four broken
ribs, fractures in both legs, vaginal and anal tears, and significant bruising.[2] 
These injuries were in various stages of healing, and several of the injuries
would have been visible to caregivers or caused her to exhibit signs of
discomfort, alerting others to her condition.[3] 
The existence and severity of the victim’s injuries, their duration, and
appellant’s relation to and contact with the victim constitute circumstantial
evidence that he knowingly or recklessly endangered her life by failing to
act.  Circumstantial evidence alone can meet the beyond-a-reasonable-doubt
threshold.  See Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App.
1999).

            In addition,
the majority states that the trial judge apparently not only considered that
appellant knew about the injuries and did nothing but also considered that
appellant may have brutally tortured and murdered the decedent.  However, the
record shows that after the punishment hearing, the trial judge noted that
“there is absolutely no evidence” appellant caused the victim’s bruises and
broken ribs.  Later, after closing arguments, the trial judge commented as
follows:

            I can only conclude from what I have seen
that this child was brutally murdered, brutally tortured. . . .  I find it
unreasonable that anyone could believe that the people who—the mother and
father of the child could have not known of these matters that I have
discussed that are found in these medical records. . . .  I do believe that
whatever went on, whatever happened to this little girl, I can only conclude
that [appellant] not only knew about it—he has admitted to
striking the girl, but the injuries and damages that I see in the records
don’t—they don’t come about by one blow.  They don’t come about by one
striking.  And they didn’t all happen on November 19th when the baby died.

(emphasis added).  Thus,
the record demonstrates that although the trial court did not believe the
evidence showed appellant caused the victim’s extraneous injuries, it
found he must have known about them.[4]

            Because the
trial court could have found beyond a reasonable doubt that appellant was aware
of the abuse and failed to act, I disagree with the majority’s conclusion that
the trial court erred in considering the victim’s pre-existing injuries in
assessing punishment.

            For this
reason, I dissent.

 

 

 

                                                                                    

                                                                        /s/        Leslie
Brock Yates

                                                                                    Justice

 

 

 

 

Judgment rendered and Majority and
Dissenting Opinions filed June 29, 2006.

Panel consists of Chief Justice
Hedges and Justices Yates and Anderson (Hedges, C.J. majority).

Publish — Tex. R. App. P. 47.2(b).









[1] 
Reverend Samuel Thompson testified that appellant “always had [the victim] with
him in his arms, and he’s just treated her as a father would a child that he
loves.”  Letha Thompson, the reverend’s wife, testified that she had seen the
victim with appellant on “[m]any occasions” and had seen appellant care for
her.





[2]  
The majority notes that the record does not contain the victim’s medical
records.  However, the record indicates that the victim’s autopsy report, her
pediatrician’s records, and her records from Huntsville Memorial Hospital and Hermann Children’s Hospital were used as source documents for the PSI, which
appellant requested.  Also, the record shows the trial court had these medical
records in its file and reviewed them to ensure the PSI’s accuracy.  Finally,
despite its complaint that the record contains no medical records, the majority
describes the medical reports as “evidence” and discusses them at length.





[3] 
The majority accuses the dissent of inference stacking, claiming the dissent
infers the victim’s injuries would have been visible to caregivers despite the
absence of medical records or expert testimony as to when the injuries occurred
and whether they were visible.  However, the PSI, which summarized the medical
evidence in the court’s file, states the victim had “six to seven bruises” on
her right side that were “yellow in color.”  Further, it is inconceivable that
the victim would have been asymptomatic given her extensive list of injuries,
which included, in addition to external bruising, “bilateral abdominal trauma,
hypovolemic shock (decreased blood volume), abdominal compartment syndrome,
proximal jejunal (second of the small intestine) perforation, pancreatic
contusion, . . . bilateral perinephric hematomas (bruises to the kidneys),”
healing fractures on four ribs, fractures in both legs, and possible vaginal
injury.  Moreover, although some of the injuries’ dates were unknown, the PSI
indicated the rib fractures were ten to fourteen days old, the bruises were two
to three days old, and the abdominal injury was six to twelve hours old.





[4] 
Moreover, the trial court could have considered evidence of appellant’s
truthfulness in weighing his claim that he did not see the victim’s bruises. 
The Houston surgeon who treated the victim told appellant her abdominal
injuries were inconsistent with his explanation for them (chest compressions). 
Further, the medical reports summarized in the PSI ruled out appellant’s
version of the victim’s abdominal injury due to her severe blood loss on
arrival.  Given these inconsistencies, the trial court could reasonably have
believed appellant knew of the victim’s injuries—at least within the eight
hours he had her before she arrived at the hospital—and disbelieved appellant’s
claim that he did not know of them.