COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-201-CR

 

 

ANTHONY DESEAN WILLIAMS 

A/K/A
ANTHONY WILLIAMS                                                               APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

              FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I. 
Introduction

In
two points, Appellant Anthony DeSean Williams a/k/a Anthony Williams appeals
his conviction for violation of a protective order.  We affirm.

II. 
Factual and Procedural History








On
December 19, 2007, seventy‑three‑year‑old Lucille Williams
applied for a protective order and a temporary ex parte order against her son,
Williams, to prevent any acts of family violence against her.  On January 7, 2008, the trial court issued
the protective order, which was valid for two years.  At the time that Lucille applied for the
protective order and at its issuance, Williams was incarcerated in the Tarrant
County Jail.

On
June 27, 2008, just a few days after being released from jail, Williams arrived
at Lucille=s
home and tried to enter, first by using his key and then by ringing the
doorbell.  While Lucille called the
police, Williams went around to the back of the house and forced his way in by
kicking the door off its hinges.  After
entering the house, he kicked a box fan, denting it, and he kicked in the glass
door of the stove, shattering it.  He
shoved Lucille onto the resulting shards of glass on the floor, which cut her
legs.

Fort
Worth Police Officer Daniel Davis responded to Lucille=s
911 call, which was played for the jury, and he photographed her injury and the
property damage.  Williams left before
Officer Davis arrived, but Lucille told him that Williams would be at his
father=s
house, a few blocks away.  Officer Davis
found Williams at his father=s
house and, after discovering via dispatch that there was a protective order
protecting Lucille from Williams, arrested Williams for violating it.  A jury found Williams guilty of violating the
protective order and sentenced him to eight years=
confinement.  This appeal followed. 








III. 
Sufficiency of the Evidence

Williams
complains that the evidence is not legally and factually sufficient to support
his conviction because the State failed to show that he was aware that the
protective order had been issued against him. 

A.  Applicable Law

Williams
was charged in the indictment with intentionally or knowingly violating the
protective order by intentionally causing bodily injury to Lucille by pushing
her to the floor.  A person commits the
offense of violation of a protective order if, in violation of an order issued
under chapter 85 of the family code, among others, he knowingly or
intentionally commits family violence.  See
Tex. Penal Code Ann. ' 25.07(a)(1) (Vernon Supp.
2009); Harvey v. State, 78 S.W.3d 368, 370 (Tex. Crim. App. 2002).  Furthermore, there is a culpable mental state
for the element Ain violation of an order@
because the meaning of that term necessarily requires some knowledge of the
orderCthat
is, the respondent must know of the order, or at least of the application for
the order, for him to be able to violate it. 
Harvey, 78 S.W.3d at 371, 373 (AThe
requirements are only that the respondent be given the resources to learn the
[protective order=s] provisions; that is, that
he be given a copy of the order, or notice that an order has been
applied for and that a hearing will be held to decide whether it will be
issued.@
(emphasis added)). 








B.  Evidence Pertaining to Knowledge

The
application for protective order, the temporary ex parte order and show cause
order (Atemporary
order@),
and the protective order were entered in evidence at trial.  They each bear an officer=s
return signed by Deputy Constable Dale Gilliam, the deputy assigned to provide
service of court documents to inmates at the Tarrant County Jail.  Constable Sergio DeLeon testified in Deputy
Gilliam=s
place because Deputy Gilliam was home recovering from an on‑the‑job
injury. 

Constable
DeLeon testified that court documents are hand‑couriered to his
department and logged into the county=s
mainframe before being dispersed to the various deputies in his
department.  With regard to service of
documents at the county jail, Constable DeLeon testified that if there is more
than one inmate with the same name, the individual will be identified using his
name and date of birth to determine his location in the jail. 

Constable
DeLeon described the procedure used by Deputy Gilliam to serve inmates as first
checking his weapon at the jail entrance, then instructing the elevator
operator to deliver him to the particular Apod@
where the inmate lives, and then meeting the pod=s
deputy, who escorts him to the pod where Athe
inmate is then called out to receive service of process.@  He stated that Deputy Gilliam will then ask
the particular defendant, A[A]re
you so and so,@ and
when the particular defendant replies, A[Y]es,@
Deputy Gilliam serves the court document.








Constable
DeLeon further testified that after a defendant has been served, a deputy is Ainstructed
by law[] to fill out the return, and that=s,
basically, who served it, who was served, the date and time it was served, and
then . . . get that back to the court in an expeditious manner.@  He noted that occasionally a signature is
required by the person receiving service but that usually this is a requirement
set out by the plaintiff, and in Aa
majority, 99 percent of our particular serves, we=re
just there to serve the defendant and then that=s
it.@  He testified that protective orders do not
require a signature by the person receiving service.

Constable
DeLeon testified that all three documents were served on Williams at the
Tarrant County Jail and that he had never had any problems with Deputy Gilliam
delivering documents according to their operating procedures.  He stated that Deputy Gilliam delivered the
protective order application and temporary order to Williams on December 20,
2007, in person at the Tarrant County Jail, at 4:25 p.m.  Each document contained the officer=s
return stating that Deputy Gilliam delivered it Ato
the within named Anthony D. Williams in person@ and
notice that a hearing would be held on January 7, 2008.  Constable DeLeon also testified that on
January 10, 2008, Deputy Gilliam received the protective order issued on January
7 at 11:00 a.m. and served it to Williams at 3:45 p.m.  The officer=s
return states that Deputy Gilliam delivered it Ato
the within named Anthony D. Williams.@ 

On
cross examination, Constable DeLeon gave the following testimony:








Q.  And even though you didn=t actually serve any
of the papers in this case, you have a procedure that everybody follows,
correct?

 

A.  Correct.

 

Q.  I mean, you do the same thing over and over
in the same way every time.  That way,
you can come in and say, AThis is how we do it,@ and AI know this is how we
do it because that=s the way we do it
all the time@?

 

A.  Correct.

 

Q.  And with very few exceptions, would you agree
with me, that=s the way it=s done?

 

A.  Sure.

 

Q.  And there might be an exception somewhere,
but as a general rule, that=s not the case; would
you agree with me on that?

 

A.  Yes, sir, I would.

C.  Legal Sufficiency

1.  Standard of Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

2.  Application








Williams
argues that the State presented no evidence that he had actual notice of the
protective order=s existence.[2]  Under Harvey, however, the State only
had to present sufficient evidence that Williams had notice that Lucille
applied for an order and that the court would hold a hearing on that
application. See 78 S.W.3d at 373. 
The legal sufficiency standard of review is the same for direct and
circumstantial evidence cases.  Clayton,
235 S.W.3d at 778.








Here,
Constable DeLeon=s testimony and the returns
of service on the documents themselves establish that Deputy Gilliam served
Williams with the application, the temporary order, and the protective
order.  See Sauve v. State, 638
S.W.2d 608, 610 (Tex. App.CDallas
1982, pet. ref=d)
(explaining in a juvenile transfer case that a facially valid officer=s
return carries a presumption of the truth of the facts stated on the return and
of regularity; this presumption can only be rebutted by testimony coupled with
corroborating facts and circumstances). 
Therefore, viewing all of the evidence in the light most favorable to
the prosecution, we conclude that the jury could have found beyond a reasonable
doubt that Williams received notice of the application, the temporary order,
and the protective order and, therefore, that he intentionally or knowingly
violated the protective order by his actions on June 27, 2008.  See Jackson, 443 U.S. at 319,
99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  We overrule Williams=s
second point.

D.  Factual Sufficiency

1.  Standard of Review

When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party. Steadman
v. State, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s
determination is manifestly unjust.  Steadman,
280 S.W.3d at 246; Watson, 204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, although legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








Unless
we conclude that it is necessary to correct manifest injustice, we must give
due deference to the factfinder=s
determinations, Aparticularly those determinations
concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always factually sufficient when
it preponderates in favor of the conviction. 
Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d at
417.

2.  Application

In
his first point, attacking the factual sufficiency of the evidence, Williams
contends that no one testified that he was actually notified of the protective
order=s
existence, that Constable DeLeon based his testimony on his deputy=s
records and not on personal knowledge, and that no one testified that Williams
was the same Williams who received service.








A
factual sufficiency review of circumstantial evidence is the same as a review
of direct evidence.  King v. State,
29 S.W.3d 556, 565 (Tex. Crim. App. 2000); Kutzner v. State, 994 S.W.2d
180, 184 (Tex. Crim. App. 1999) (reasoning that A[c]ircumstantial
evidence, by itself, may be enough to support the jury=s
verdict@).  Notwithstanding Constable DeLeon=s
testimony that Deputy Gilliam properly served Williams with the protective
order on January 10, 2008, the State also put forth the only evidence that Harvey
requiresCevidence
showing that Williams was notified of the application and of the impending
hearing.  See Harvey, 78 S.W.3d at
373.  And Constable DeLeon testified
extensively about the procedures used to identify the correct inmate for service
of process in the county jail. 
Considering all of the evidence in a neutral light, we hold that the
proof of notice is not so weak that the jury=s
determination that Williams intentionally or knowingly violated the protective
order is clearly wrong and manifestly unjust. 
See Steadman, 280 S.W.3d at 246. 
And there is no conflicting evidence in the record to outweigh the
evidence supporting the conviction or that would render the jury=s
determination manifestly unjust.  See
id.; Watson, 204 S.W.3d at 414B15,
417; cf. Polley v. State, No. 11‑03‑00340‑CR, 2004 WL
2964785, at *2 (Tex. App.CEastland Dec. 16, 2004, pet.
ref=d)
(not designated for publication) (holding that the evidence was factually
sufficient to establish notice of the protective order based on a witness=s
testimony, even though return of service was not introduced in evidence).  Accordingly, we overrule Williams=s
first point.

IV. 
Conclusion

Having
overruled both of Williams=s
points, we affirm the trial court=s
judgment.

 

PER
CURIAM

PANEL:  MCCOY, J.; LIVINGSTON, C.J.; and WALKER, J.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:
July 8, 2010











[1]See Tex. R. App. P.
47.4.





[2]Williams does not
challenge the sufficiency of the evidence to support the offense=s remaining elements
and, based on our review of the record, there is sufficient evidence to support
them.  That is, the State demonstrated
that a protective order had been issued against Williams for Lucille=s protection and that
Williams violated it by intentionally causing bodily injury to Lucille by
pushing her to the floor.