

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-09-201-CR**

ANTHONY DESEAN WILLIAMS
A/K/A ANTHONY WILLIAMS                                                 APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

In two points, Appellant Anthony DeSean Williams a/k/a Anthony Williams appeals his conviction for violation of a protective order. We affirm.

## II. Factual and Procedural History

On December 19, 2007, seventy-three-year-old Lucille Williams applied for a protective order and a temporary ex parte order against her son, Williams, to prevent

---

[1] *See* Tex. R. App. P. 47.4.

any acts of family violence against her. On January 7, 2008, the trial court issued the protective order, which was valid for two years. At the time that Lucille applied for the protective order and at its issuance, Williams was incarcerated in the Tarrant County Jail.

On June 27, 2008, just a few days after being released from jail, Williams arrived at Lucille's home and tried to enter, first by using his key and then by ringing the doorbell. While Lucille called the police, Williams went around to the back of the house and forced his way in by kicking the door off its hinges. After entering the house, he kicked a box fan, denting it, and he kicked in the glass door of the stove, shattering it. He shoved Lucille onto the resulting shards of glass on the floor, which cut her legs.

Fort Worth Police Officer Daniel Davis responded to Lucille's 911 call, which was played for the jury, and he photographed her injury and the property damage. Williams left before Officer Davis arrived, but Lucille told him that Williams would be at his father's house, a few blocks away. Officer Davis found Williams at his father's house and, after discovering via dispatch that there was a protective order protecting Lucille from Williams, arrested Williams for violating it. A jury found Williams guilty of violating the protective order and sentenced him to eight years' confinement. This appeal followed.

### III. Sufficiency of the Evidence

Williams complains that the evidence is not legally and factually sufficient to support his conviction because the State failed to show that he was aware that the protective order had been issued against him.

### A. Applicable Law

Williams was charged in the indictment with intentionally or knowingly violating the protective order by intentionally causing bodily injury to Lucille by pushing her to the floor. A person commits the offense of violation of a protective order if, in violation of an order issued under chapter 85 of the family code, among others, he knowingly or intentionally commits family violence. *See* Tex. Penal Code Ann. § 25.07(a)(1) (Vernon Supp. 2009); *Harvey v. State*, 78 S.W.3d 368, 370 (Tex. Crim. App. 2002). Furthermore, there is a culpable mental state for the element "in violation of an order" because the meaning of that term necessarily requires some knowledge of the order—that is, the respondent must know of the order, or at least of the application for the order, for him to be able to violate it. *Harvey*, 78 S.W.3d at 371, 373 ("The requirements are only that the respondent be given the resources to learn the [protective order's] provisions; that is, that he be given a copy of the order, *or* notice that an order has been applied for and that a hearing will be held to decide whether it will be issued." (emphasis added)).

## B. Evidence Pertaining to Knowledge

The application for protective order, the temporary ex parte order and show cause order ("temporary order"), and the protective order were entered in evidence at trial. They each bear an officer's return signed by Deputy Constable Dale Gilliam, the deputy assigned to provide service of court documents to inmates at the Tarrant County Jail. Constable Sergio DeLeon testified in Deputy Gilliam's place because Deputy Gilliam was home recovering from an on-the-job injury.

Constable DeLeon testified that court documents are hand-couriered to his department and logged into the county's mainframe before being dispersed to the various deputies in his department. With regard to service of documents at the county jail, Constable DeLeon testified that if there is more than one inmate with the same name, the individual will be identified using his name and date of birth to determine his location in the jail.

Constable DeLeon described the procedure used by Deputy Gilliam to serve inmates as first checking his weapon at the jail entrance, then instructing the elevator operator to deliver him to the particular "pod" where the inmate lives, and then meeting the pod's deputy, who escorts him to the pod where "the inmate is then called out to receive service of process." He stated that Deputy Gilliam will then ask the particular defendant, "[A]re you so and so," and when the particular defendant replies, "[Y]es," Deputy Gilliam serves the court document.

Constable DeLeon further testified that after a defendant has been served, a deputy is "instructed by law[] to fill out the return, and that's, basically, who served it, who was served, the date and time it was served, and then . . . get that back to the court in an expeditious manner." He noted that occasionally a signature is required by the person receiving service but that usually this is a requirement set out by the plaintiff, and in "a majority, 99 percent of our particular serves, we're just there to serve the defendant and then that's it." He testified that protective orders do not require a signature by the person receiving service.

Constable DeLeon testified that all three documents were served on Williams at the Tarrant County Jail and that he had never had any problems with Deputy Gilliam delivering documents according to their operating procedures. He stated that Deputy Gilliam delivered the protective order application and temporary order to Williams on December 20, 2007, in person at the Tarrant County Jail, at 4:25 p.m. Each document contained the officer's return stating that Deputy Gilliam delivered it "to the within named Anthony D. Williams in person" and notice that a hearing would be held on January 7, 2008. Constable DeLeon also testified that on January 10, 2008, Deputy Gilliam received the protective order issued on January 7 at 11:00 a.m. and served it to Williams at 3:45 p.m. The officer's return states that Deputy Gilliam delivered it "to the within named Anthony D. Williams."

On cross examination, Constable DeLeon gave the following testimony:

Q. And even though you didn't actually serve any of the papers in this case, you have a procedure that everybody follows, correct?

A. Correct.

Q. I mean, you do the same thing over and over in the same way every time. That way, you can come in and say, "This is how we do it," and "I know this is how we do it because that's the way we do it all the time"?

A. Correct.

Q. And with very few exceptions, would you agree with me, that's the way it's done?

A. Sure.

Q. And there might be an exception somewhere, but as a general rule, that's not the case; would you agree with me on that?

A. Yes, sir, I would.

## C. Legal Sufficiency

### 1. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

### 2. Application

Williams argues that the State presented no evidence that he had actual notice of the protective order's existence.[2] Under *Harvey*, however, the State only had to present sufficient evidence that Williams had notice that Lucille applied for an order and that the court would hold a hearing on that application. *See* 78 S.W.3d at 373. The legal sufficiency standard of review is the same for direct and circumstantial evidence cases. *Clayton*, 235 S.W.3d at 778.

Here, Constable DeLeon's testimony and the returns of service on the documents themselves establish that Deputy Gilliam served Williams with the application, the temporary order, and the protective order. *See Sauve v. State*, 638 S.W.2d 608, 610 (Tex. App.—Dallas 1982, pet. ref'd) (explaining in a juvenile transfer case that a facially valid officer's return carries a presumption of the truth of the facts stated on the return and of regularity; this presumption can only be rebutted by testimony coupled with corroborating facts and circumstances). Therefore, viewing all of the evidence in the light most favorable to the prosecution, we conclude that the jury could have found beyond a reasonable doubt that Williams received notice of the application, the temporary order, and the protective order and, therefore, that he intentionally or knowingly violated the protective order by his

---

[2] Williams does not challenge the sufficiency of the evidence to support the offense's remaining elements and, based on our review of the record, there is sufficient evidence to support them. That is, the State demonstrated that a protective order had been issued against Williams for Lucille's protection and that Williams violated it by intentionally causing bodily injury to Lucille by pushing her to the floor.

actions on June 27, 2008. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We overrule Williams's second point.

## D. Factual Sufficiency

### 1. Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246.

Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

### 2. Application

In his first point, attacking the factual sufficiency of the evidence, Williams contends that no one testified that he was actually notified of the protective order's existence, that Constable DeLeon based his testimony on his deputy's records and not on personal knowledge, and that no one testified that Williams was the same Williams who received service.

A factual sufficiency review of circumstantial evidence is the same as a review of direct evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000); *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999) (reasoning that "[c]ircumstantial evidence, by itself, may be enough to support the jury's verdict"). Notwithstanding Constable DeLeon's testimony that Deputy Gilliam properly served Williams with the protective order on January 10, 2008, the State also put forth the only evidence that *Harvey* requires—evidence showing that Williams was notified of the application and of the impending hearing. *See Harvey*, 78 S.W.3d at 373. And Constable DeLeon testified extensively about the procedures used to identify the correct inmate for service of process in the county jail. Considering all of the evidence in a neutral light, we hold that the proof of notice is not so weak that the jury's determination that Williams intentionally or knowingly violated the protective order is clearly wrong and manifestly unjust. *See Steadman*, 280 S.W.3d at 246.

9

And there is no conflicting evidence in the record to outweigh the evidence supporting the conviction or that would render the jury's determination manifestly unjust. *See id.*; *Watson*, 204 S.W.3d at 414–15, 417; *cf. Polley v. State*, No. 11-03-00340-CR, 2004 WL 2964785, at *2 (Tex. App.—Eastland Dec. 16, 2004, pet. ref'd) (not designated for publication) (holding that the evidence was factually sufficient to establish notice of the protective order based on a witness's testimony, even though return of service was not introduced in evidence). Accordingly, we overrule Williams's first point.

## IV. Conclusion

Having overruled both of Williams's points, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MCCOY, J.; LIVINGSTON, C.J.; and WALKER, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 8, 2010