Affirmed and Memorandum Opinion filed March 28, 2006









Affirmed and Memorandum Opinion filed March 28, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-01234-CR

____________

 

SHELDON EUGENE
THOMPSON,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 180th
District Court

Harris County, Texas

Trial Court Cause No. 893,085

 



 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant Sheldon Eugene
Thompson of capital murder, and the trial court sentenced him to life
imprisonment.  In two issues, appellant
challenges the legal and factual sufficiency of the evidence supporting his
conviction.  We affirm.

Factual and
Procedural Background








Around 2:00 a.m. on November 1, 2004,
police arrived at the home of Albert Lee Jones in response to a neighbor=s 911 call
reporting a shooting.  Responding
officers found Jones dead from several gunshot wounds and lying in his driveway
near a white suburban and a blue suburban. 
Jones=s knees appeared Ascuffed@ and dirty,
indicating a possible struggle.  Near
Jones=s body, police
found shell casings, a bullet, broken glass, two remote controls, a set of
keys, and two rings later identified as Jones=s.  Jones=s wallet and
driver=s license were
still in his pocket, but he had no cash. 
Police found blood on the driveway and on the outside of the white
suburban, which was locked and later determined to be unrelated to the
crime.  In the blue suburban, police
found blood on the front passenger seat and on an empty black pouch located in
the console area.  Jones=s son later
testified that Jones sometimes kept money in his black pouch.

Neighbors told police that a yellow
Cadillac had been parked at Jones=s house earlier
that night.  As they investigated the
scene, police saw appellant slowly drive by three times in a yellow
Cadillac.  They stopped the Cadillac and
noticed bloodstains inside the car that were later found to be consistent with
Jones=s DNA.  Appellant had minor injuries on his left knee
and his hands that he said he sustained earlier that evening at a Halloween
party.  However, appellant=s girlfriend,
Miranda Strickland, attended the party with appellant and did not recall that
he was injured there, nor could appellant provide police with a credible alibi
for his whereabouts at the time of the shooting.  Appellant was arrested, and his Cadillac was
impounded.  Norman Kiesewetter, a vehicle
examiner with the Houston Police Department, photographed the Cadillac and
collected blood evidence.  Several weeks
later, Curtis Scales, a detective with the Houston Police Department, inspected
the Cadillac and discovered keys to the blue suburban on the driver=s side
floorboard.  








The ensuing investigation revealed that
appellant and Jones were cousins, and appellant sometimes assisted Jones in his
real estate business.  Appellant often
asked Jones=s son for money, and Jones loaned
appellant $2,500 to buy a yellow Cadillac. 
The day before the shooting, Niesha Butler, an acquaintance who also
occasionally helped Jones with his business, overheard appellant ask Jones for
money.  When Jones refused, an argument
ensued in which appellant complained that Jones Anever [did]
anything for him.@ 
Jones reminded appellant he had bought the Cadillac and was not
obligated to do more.  Appellant
responded that he Amight as well start jacking,@[1] after which Jones
asked him to leave.  Two weeks before the
shooting, Strickland overheard appellant on the phone trying to obtain a gun,
and she saw a gun in appellant=s backpack the day
before the shooting.  On the night of the
shooting, appellant and Strickland returned to their home after attending a
Halloween party.  Around one in the
morning, appellant left home with his backpack and did not return. 

Jones=s neighbor, John
Theall, was home when Jones was shot. 
Sometime after midnight, John heard Aloud talking@ and heard someone
say, AOh, man, come
on.  Come on, man.@  Moments later, he heard several gunshots and
went outside to investigate.  John saw
Jones lying on his driveway with Asomeone slumped
over him@ who then got up
and drove away in a Ayellow or a cream-colored Cadillac.@  John=s brother Danny,
who also lived nearby, had noticed a yellow Cadillac parked near Jones=s house around
midnight.  He thought the Cadillac
belonged to one of Jones=s relatives.  Later, Danny heard arguing followed by
gunshots and, like his brother, went outside to investigate.  The brothers found Jones lying on his back,
trying unsuccessfully to lift his head, and struggling to breathe.  They called 911 and waited with Jones as he
died.

Analysis








The State charged appellant with capital
murder.  To convict him of capital
murder, the State had to prove he intentionally or knowingly murdered Jones in
the course of committing or attempting to commit robbery.  Tex.
Penal Code Ann. _ 19.03(a)(2)
(Vernon Supp. 2005).  A person commits
robbery if, in the course of committing theft, he intentionally, knowingly, or
recklessly causes another bodily injury or places another in fear of imminent
bodily injury or death.  Tex. Penal Code Ann. _ 29.02(a) (Vernon 2003).  The intent to rob must be formulated before
or at the time of the murder.  Conner
v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).  An attempt is Aan act amounting
to more than mere preparation that tends but fails to effect the commission of
the offense intended.@  Tex. Penal Code Ann. _ 15.01(a) (Vernon 2003).  

In two issues, appellant contends the
evidence is legally and factually insufficient to prove that he murdered Jones
in the course of robbing or attempting to rob him.  He claims there is no evidence that he took
Jones=s property or that
the keys to the blue suburban found in the Cadillac belonged to Jones.  In conducting a legal-sufficiency review, we
view the evidence in the light most favorable to the verdict.  Wesbrook v. State, 29 S.W.3d 103, 111
(Tex. Crim. App. 2000).  We do not ask
whether we believe the evidence at trial established guilt beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 318B19 (1979). 
Rather, we determine only whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Cardenas v. State, 30 S.W.3d 384, 389
(Tex. Crim. App. 2000).  In our review,
we accord great deference A>to the
responsibility of the trier of fact [fairly to] resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.=@  Clewis v. State, 922 S.W.2d 126, 133
(Tex. Crim. App. 1996) (quoting Jackson, 443 U.S. at 319).  We presume that any conflicting inferences
from the evidence were resolved by the jury in favor of the prosecution, and we
defer to that resolution.  Id. at
133 n.13.








In conducting a factual-sufficiency
review, we do not view the evidence Ain the light most
favorable to the prosecution.@  Cain v. State, 958 S.W.2d 404, 407
(Tex. Crim. App. 1997).  Instead, we view
the evidence in a neutral light and inquire whether the jury was rationally
justified in finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  We may find the
verdict factually insufficient in two ways. 
First, when considered by itself, the evidence supporting the verdict may
be too weak to support the finding of guilt beyond a reasonable doubt.  Id. 
Second, after weighing the evidence supporting the verdict, the
contrary evidence may be strong enough that the beyond-a-reasonable-doubt
standard could not have been met.  Id.  We must discuss the evidence appellant
claims is the most important in allegedly undermining the jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  However, we must
employ appropriate deference so that we do not substitute our judgment for that
of the fact-finder.  Zuniga, 144
S.W.3d at 482.  Our evaluation should not
intrude upon the fact-finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony.  Cain, 958 S.W.2d at 407.

Having reviewed the record, we find the
evidence legally and factually sufficient to support the jury=s verdict.  John and Danny Theall responded almost
immediately when Jones was shot.  They
testified that they found Jones lying on his back, struggling to breathe, and
unable to lift his head.  Despite Jones=s evident
inability to transport himself, his blood was found in the blue suburban on the
passenger seat and on a bag in which he sometimes kept money.  Additionally, Jones=s rings and
several objects from the blue suburban were scattered on the driveway near his
body.  Witness testimony established that
appellant often needed money, Jones had recently refused to loan him money, and
appellant told Jones that he might start Ajacking.@  Further, Jones and appellant both had
physical injuries and Jones=s property was
scattered at the scene, suggesting they may have struggled over the
property.  Although the evidence is
circumstantial, circumstantial evidence alone can support a jury verdict.  See Kutzner v. State, 994 S.W.2d 180,
184 (Tex. Crim. App. 1999).  We find
that, based on this evidence, a rational jury could have found that appellant
shot Jones while robbing or attempting to rob him.








Appellant claims the evidence is too weak
to support a finding that he robbed Jones. 
He points out that the State never proved the keys found in appellant=s Cadillac
belonged to Jones or that Jones had money in his black pouch when he was
robbed.  In support of this argument, appellant
cites Herrin v. State, in which the Court of Criminal Appeals reversed a
capital murder conviction after finding legally insufficient the State=s evidence that
the victim=s wallet was missing and the appellant
thought the victim owed him money.  125
S.W.3d 436, 441B42 (Tex. Crim. App. 2002).[2]  However, this case is distinguishable from Herrin
because here more evidence supports a finding of robbery or attempted
robbery.  Here, a witness saw someone
crouching over Jones immediately after Jones was shot who then got into a car
matching the description of appellant=s car.  Jones=s jewelry and
other belongings were scattered near his body, and his blood was found on his
black pouch and in his suburban. 
Additionally, police found Jones=s blood and keys
to the blue suburban in appellant=s car, which they
impounded the night Jones was murdered. 
To support a capital murder conviction, the State is not required to
prove, as appellant seems to argue, that Jones=s property was
found in appellant=s possession.  Rather, the State must prove that appellant
committed or attempted to commit robbery when he murdered Jones.  See Tex.
Penal Code Ann. _ 19.03(a)(2).  Based on the evidence, the jury rationally
could have found that appellant removed Jones=s jewelry and
items from his suburban when he shot Jones and that he dropped or abandoned
some items as he left the scene. 
Moreover, even if, as appellant argues, the State never proved the keys
found in appellant=s Cadillac belonged to Jones, the jury
could have considered their presence evidence that appellant entered the
suburban and accessed the black pouch and items found near Jones=s body. 








Appellant further complains that police
did not discover the keys to the blue suburban in appellant=s Cadillac until
several weeks after the Cadillac was impounded and suggests that they were
planted.  However, appellant=s suggestion is
merely speculative.  Moreover, the jury
heard testimony from both Kiesewetter and Detective Scales regarding how the
keys were discovered.  The jury, as sole
judge of the weight and credibility to be given witness testimony, could
reasonably have found their accounts credible. 
Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). 

Viewing this evidence in a light most
favorable to the verdict, we conclude a rational jury could have found the
elements of capital murder beyond a reasonable doubt.  Viewing the same evidence in a neutral light,
we conclude the evidence is not too weak, nor the contrary evidence too strong,
to support a finding of guilt beyond a reasonable doubt.  Thus, the evidence is legally and factually
sufficient to support the verdict. 
Accordingly, we overrule appellant=s two issues.

We affirm the trial court=s judgment.

 

 

 

/s/      Leslie Brock Yates

Justice

 

Judgment
rendered and Memorandum Opinion filed March 28, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Guzman.

Do
Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  Butler
testified that she understood Ajacking@ to mean
robbing people.





[2]  In Herrin, the appellant
walked past witnesses to the victim=s truck and said, AI=ve got you now, you son of a b____,@ shooting the victim.  Herrin, 125 S.W.3d at 438.  At trial, the State produced evidence that
the victim was known to carry a sizeable amount of cash, he had cash in his
wallet before he was murdered, and his wallet was never found.  Id. at 441.  The State also showed that the appellant
believed the victim owed him money.  Id.
 The Court of Criminal Appeals held
this evidence was Abased wholly on speculation,@ amounted only to suspicion, and
could not support a rational inference that the appellant intended to rob the
victim.  Id. at 442B43.