Affirmed and Memorandum Opinion filed November 4, 2008








Affirmed and Memorandum Opinion filed November 4, 2008.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00243-CR

_______________

 

SHEFREN DEWAYNE DIXON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 208th District Court

Harris County, Texas

Trial Court Cause No. 1106351

                                                                                                                                                

 

M E M O R A N D U M   O P I N I O N

A jury
found appellant, Shefren Dewayne Dixon, guilty of aggravated robbery.  After
finding two enhancement paragraphs were true, the jury assessed punishment of
fifty years= confinement.  In two issues, appellant contends the evidence is legally
and factually insufficient to support the jury=s finding that the robbery was Aaggravated.@  Because all dispositive issues are
clearly settled in law, we issue this memorandum opinion and affirm.  See Tex.
R. App. P. 47.4.








I.  Background

The
complainant, Christopher Moskal, testified that he and some friends went to a
bar on September 30, 2006.  Appellant, whom Moskal had never met, socialized
with the group.  At one point, while Moskal briefly left the table, appellant
took Moskal=s cellular phone, which he had placed on the table.  When Moskal
confronted appellant, he first denied taking the phone.  However, appellant
then claimed the phone was with another patron, who had left the bar, and
appellant would help retrieve it.  Appellant and Moskal followed this patron to
another bar, less than a block away.  Moskal allowed appellant to drive Moskal=s car because they had earlier
discussed the possibility of appellant=s purchasing the vehicle.  While at
the second bar, appellant retrieved the phone.

Appellant
then insisted on again driving Moskal=s car.  The car was backed into a
parking space.  Appellant entered the driver=s side.  As Moskal walked to the
passenger=s side, appellant said that Moskal did not need to get in the car. 
Moskal heard appellant place the car Ain gear,@ so Moskal walked back to the driver=s side.  Moskal tried to persuade
appellant to exit the car.  At this point, the driver=s door was open.  Moskal reached into
the driver=s side, attempting to grab the keys, because he thought appellant was
stealing the vehicle.  Appellant then accelerated.  Moskal was struck by a
portion of the vehicle behind the driver=s door area and knocked to the
ground.  During the incident, Moskal sustained a laceration, about
three-centimeters long, on the left side of his abdomen.  Approximately thirty
minutes later, the police found appellant in possession of Moskal=s vehicle a few blocks from the scene
of the incident.        

II.  Standard of Review








In
considering a legal-sufficiency challenge, we review all evidence in the light
most favorable to the finding to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  Salinas v. State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005).  The
jury is sole judge of the credibility of witnesses and is free to believe or
disbelieve all or part of a witness=s testimony.  Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  We ensure only that the jury
reached a rational decision and do not reevaluate the weight and credibility of
the evidence.  Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App.
1993).  

In
examining a factual-sufficiency challenge, we view all evidence in a neutral
light and set aside the verdict only if (1) the evidence is so weak that the
verdict seems clearly wrong or manifestly unjust, or (2) the verdict is against
the great weight and preponderance of the evidence.  See Marshall v.
State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State,
204 S.W.3d 404, 414B15 (Tex. Crim. App. 2006); Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997).  Although we are permitted to substitute our
judgment for the jury=s when considering credibility and weight determinations, we
may do so only to a very limited degree and must still afford due deference to
the jury=s determinations.  See Marshall,
210 S.W.3d at 625.

III.  Analysis

A person
commits robbery Aif, in the course of committing theft . . . and with intent
to obtain or maintain control of the property, he . . . intentionally or
knowingly threatens or places another in fear of imminent bodily injury or
death.@  Tex. Penal Code Ann. ' 29.02(a)(2) (Vernon 2003).  In his
brief, appellant specifically states he does not challenge sufficiency of the
evidence to establish that he committed robbery.  








Instead,
appellant contends the evidence is legally and factually insufficient to prove
he committed aggravated robbery. A person commits aggravated robbery Aif he commits robbery as defined in
Section 29.02, and he . . . uses or exhibits a deadly weapon.@  Tex. Penal Code Ann. ' 29.03(a)(2) (Vernon 2003).  The jury
was instructed to determine whether appellant committed aggravated robbery by
one of two alternative methods, which differed relative to the deadly weapon
allegedly used or exhibited: a knife or an unknown sharp object.  Because the
jury returned a general verdict finding appellant guilty, we may uphold the
verdict if the evidence is sufficient to support a finding that appellant
committed aggravated robbery by either alternative method.  See Brooks
v. State, 990 S.W.2d 278, 283 (Tex. Crim. App. 1999); Kitchens v. State,
823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

Appellant
contends the evidence is insufficient to support the finding that he used or
exhibited a deadly weapon during the robbery.  In particular, appellant claims
the evidence is insufficient to establish that he inflicted Moskal=s laceration using a knife or unknown
sharp object. However, the State presented circumstantial evidence that
appellant used a deadly weapon during the robbery by inflicting Moskal=s laceration with a box cutter.  See
Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999) (recognizing
circumstantial evidence may be sufficient to support a conviction).

Moskal
described the laceration as a Aslice,@ as opposed to a Astab@CAnot so long, but very sharp.@  As appellant asserts, Moskal did
not observe appellant inflict the laceration, specifically remember getting Acut,@ or see the object that caused this
wound.  Further, the State did not present testimony from any witness who saw
appellant inflict the laceration.  Instead, Moskal testified that, when he rose
from the ground after the incident, he saw blood and realized he had been
wounded.  However, Moskal testified he had not sustained the laceration before
he reached into his vehicle, trying to prevent appellant from stealing it.








Moreover,
Houston Police Officer Thomas Teel testified that, approximately thirty minutes
after the incident, the police found Moskal=s vehicle a few blocks from the
scene.  Appellant was inside the vehicle and appeared to be Astripping@ the interior.  Officer Teel observed
a box cutter on the ground next to the vehicle and a knife in the pocket of
some clothing on the roof of the vehicle.[1] 
The box cutter and knife were admitted into evidence at trial.  Moskal
testified he had a knife in his car at the time of the incident but had never
seen the box cutter.

Further,
Dr. Blaine Bachim treated Moskal after the incident.  Dr. Bachim testified that
a wound from the box cutter admitted at trial would be consistent with Moskal=s laceration because the wound was
shallow, penetrating only superficial muscle layers but not violating the
peritoneum.  Dr. Bachim also testified the box cutter was a deadly weapon.  Dr.
Bachim opined that the knife admitted at trial would not have caused the type
of injury sustained by Moskal.

In sum,
the State presented the following evidence: appellant forcibly took possession
of Moskal=s vehicle; during the incident, Moskal sustained a laceration that was
consistent with a wound inflicted by a box cutter; about thirty minutes later,
a box cutter was found next to Moskal=s vehicle; and Moskal had never
previously seen this box cutter.  Therefore, the jury could have reasonably
concluded that appellant inflicted Moskal=s laceration with a box cutter.  The 
jury could also have rationally inferred that Moskal did not see or feel
appellant inflict the laceration because the incident occurred quickly while
Moskal struggled to prevent appellant from stealing his car.








Nonetheless,
appellant cites evidence allegedly undermining the jury=s verdict.  Appellant suggests the
following evidence showed that some object on the ground could have inflicted
the laceration when Moskal fell: on cross-examination, Moskal agreed there was
a Agood possibility@ he was cut by a sharp object on the
ground such as a piece of glass; on cross-examination, Dr. Bachim could not
definitely state the laceration was caused by a box cutter and agreed it was
possible Moskal was cut by a sharp object while being dragged on the ground;
Moskal sustained abrasions to his shoulder and abdominal region when he fell to
the ground; and photographs admitted at trial show that one abrasion covered,
and extended in the same direction as, the laceration.

However,
on re-direct examination, Moskal clarified that he Ahighly doubt[ed]@ he was cut by broken glass on the
ground because there was no glass.  Rather, Moskal believed that appellant Acut@ him as appellant accelerated to
drive away in the vehicle.   In addition, Moskal testified that, immediately
after the incident, he entered the bar saying AI got car jacked@ and AI got stabbed.@  Officer Teel testified that, when
he arrived at the scene Aminutes@ after the incident, Moskal stated that a man had Astabbed@ him and stolen his car.  According
to records admitted at trial and Dr. Bachim=s testimony, Moskal complained to
fire department personnel and the doctor that he had been Astabbed.@  The jury could have reasonably
relied on Moskal=s perception of the manner in which he sustained the
laceration when implicitly determining it was inflicted by a box cutterCnot an object on the ground.[2] 
Further, the jury could have rationally concluded that it was coincidental one
abrasion and the laceration were in the same location and extended in the same
direction.  We find no reason to intrude on the jury=s decision regarding the weight to
assign the evidence concerning the location and direction of these wounds.

Appellant
also asserts that Moskal provided conflicting testimony regarding the direction
he faced as he reached into the vehicle attempting to retrieve his keys.  When
questioned by the State, Moskal testified he faced the back of the car; thus,
the left side of his body was exposed toward appellant.  On cross-examination,
Moskal testified that his right side was exposed toward appellant as Moskal
reached into the vehicle.  According to appellant, this conflicting testimony
forced the jury to Atheorize@ or Aguess@ regarding the manner in which Moskal received the laceration. 









However,
on re-direct examination, Moskal clarified that he could not exactly remember
which portion of his body was turned toward appellant when Moskal reached into
the vehicle.  Moskal explained it was possible his body turned back and forth
as he tried to prevent appellant from stealing his vehicle.  Regardless, Moskal
testified he was Aclose@ to appellant during this time and appellant had a Avery good opportunity@ to cut Moskal on his side.  Again,
we find no reason to intrude on the jury=s resolution of any conflicts in
Moskal=s testimony when it implicitly
decided that appellant inflicted the wound. 

Finally,
appellant refers to the following: his pen packets reflect he is a large man
and has previously served prison sentences; and he had the strength to work at
one time in a brake-repair shop and to Astrip@ Moskal=s car after the incident at issue. 
According to appellant, someone of his size, strength, and prison experience
would not have merely nicked another person when stabbing him.  However,
appellant=s pen packets were not admitted during the guilt-innocence phase of the
trial.  Further, appellant does not cite any evidence admitted during the
guilt-innocence phase regarding his work history.  Nevertheless, to the extent
the jury observed appellant=s size during trial or considered that he had the strength to
Astrip@ a vehicle, the jury was free to
determine the weight to assign these factors when deciding whether appellant
inflicted Moskal=s wound.

In sum,
after reviewing all evidence in the light most favorable to the finding, we
conclude a rational jury could have found the essential elements of aggravated
robbery beyond a reasonable doubt.  Moreover, after viewing all evidence in a
neutral light, the evidence is not so weak that the finding seems clearly wrong
or manifestly unjust, and the finding is not against the great weight and
preponderance of the evidence.  Accordingly, we overrule appellant=s two issues.

 

 








We
affirm the judgment of the trial court.

 

 

/s/        Charles W. Seymore

Justice

 

 

Judgment rendered and Memorandum Opinion filed
November 4, 2008.

Panel consists of Justices Frost, Seymore, and Guzman.

Do Not Publish C
Tex. R. App. P. 47.2(b).

 

 









[1]  Officer Paul Villanueva testified that he saw the
box cutter on the roof of the vehicle, although he agreed that it may have been
moved there by another officer.  Regardless of the exact location of the box
cutter when observed by the officers, it was found in the vicinity of the
vehicle.





[2]  At several points, Moskal testified his laceration
was not a stab wound.  However, reviewing his testimony in context, Moskal
meant he was not stabbed in terms of sustaining a penetrating injury but
received a Aslice@ wound.  Moskal
clearly believed, and reported to others, he had been stabbed in terms of
sustaining a wound inflicted by a weapon, as opposed to being cut by some
object on the ground.