

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00399-CR

**JEREMY D. NASH,**

                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                        **Appellee**

### From the 278th District Court
### Leon County, Texas
### Trial Court No. CM-07-458

## MEMORANDUM OPINION

Jeremy Nash appeals from a conviction by a jury for the offense of Injury to a Child causing serious bodily injury. TEX. PEN. CODE ANN. §22.04 (Vernon 2005). The trial court assessed his punishment at confinement for twenty (20) years in the Texas Department of Criminal Justice – Institutional Division. Nash complains that the trial court erred by admitting photographs of the child which were not properly authenticated, that the evidence was both legally and factually insufficient, and that he received ineffective assistance of counsel. Because we find no reversible error, we affirm.

*Improper Admission of Evidence*

Nash complains that the trial court abused its discretion by admitting approximately fifteen photographs into evidence because the photographs were not properly authenticated. *See* TEX. R. EVID. 901. The photographs were admitted through the testimony of a physician at the hospital where the child was treated; however, that physician did not take the photographs or even see the child on the date the photographs were taken. That physician first saw the child several days after the photographs were taken.

While the rules of evidence do not require that the person who took the photographs be the sponsoring witness, the witness must provide testimony, based on personal knowledge, sufficient to support a finding that the matter in question is what its proponent claims. *See* TEX. R. EVID. 901(a); *see also Huffman v. State*, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988) (predicate for videotape or photograph need not be laid by photographer, subject of photograph, or person present when photograph taken, and any witness who observed the subject depicted in photograph may lay predicate). It is undisputed that the physician who was the sponsoring witness did not have personal knowledge of the truth of what was portrayed in the photographs as depicted that night.

Assuming without deciding that the admission of the photographs through this witness was erroneous, we find that the error, if any, was harmless. *See* TEX. R. APP. P. 44.2(b). Other properly authenticated photographs were admitted before the jury that contained similar depictions of the child when he was brought into the hospital. *See*

*Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (Overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.). Further, an investigator with Child Protective Services testified in rebuttal that she had seen the child on the night he was taken to the hospital and verified that at least seven of the photographs in question accurately portrayed the child that night based on her personal knowledge. We overrule issue one.

### Legal and Factual Sufficiency

Nash complains that the evidence was both legally and factually insufficient for the jury to find that he intentionally or knowingly caused the child's injuries beyond a reasonable doubt because the State's experts did not conclusively establish that the injuries could not have been accidental. In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Furthermore, we must consider all the evidence admitted at trial, even improperly admitted evidence, when performing a legal sufficiency review. *Clayton*, 235 S.W.3d at 778; *Moff v. State*, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing

an actor's guilt. *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414-15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that we "harbor a subjective level of reasonable doubt to overturn [the] conviction."

*Watson*, 204 S.W.3d at 417. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id.* We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008). A factual sufficiency review of circumstantial evidence is the same as a review of direct evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000); *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999) (reasoning that "[c]ircumstantial evidence, by itself, may be enough to support the jury's verdict").

***The Facts***

A fifteen-month old child was admitted to the hospital with an acute subdural hematoma. The child was covered in bruises of varying ages, including bruising to the front and back of both of his ears, his face, trunk, and extremities. The explanation ultimately given by Nash was that the child had fallen off of a chair in the bathroom. He said that he put the child on the chair when another child in the residence called to him regarding a video game and he went to help that child in another room, leaving the

injured child alone in the bathroom. When he came back, the child had fallen off of the chair. The child's mother was Nash's girlfriend, and both she and Nash stated that she was sleeping at the time of the incident. Both agreed that the child was acting normally earlier in the day, and they believed that the child's bruising was caused by an iron deficiency.

A treating physician at the hospital who had extensive experience in treating child abuse cases stated that based on his experience and knowledge his opinion was that the brain injury suffered by the child and the retinal hemorrhaging were inconsistent with the explanation of a single fall from a chair and iron deficiency. Such injuries would be caused by a severe car crash or a fall from several stories high. The child would have quickly lost consciousness after the injury. The child sustained permanent brain damage due to the injury. The retinal hemorrhaging and bruising did not continue while the child was in the hospital, indicating that there was no undiagnosed medical condition. The bruising on the front and back of the child's ears was not likely caused by an ear infection or by falls where the child landed on each ear in separate falls, but more likely by someone pulling or jerking on the ear. In his opinion, the injury to the child was "the result of an abusive event."

A defense expert neurosurgeon testified that based on his reviews of the child's medical records that the child had suffered from a chronic subdural hematoma, which was a preexisting condition. This condition, coupled with a fall from the chair, could result in the injury sustained by the child. This physician did not believe that a baby could be shaken to cause a head injury. He also relied on a study by a bioengineer

regarding testing conducted using a test dummy to measure acceleration in short falls and shaking, although the substance of that study was not further elicited before the jury. The defense expert disagreed with the findings of the American Academy of Pediatrics regarding injuries sustained by young children from falls and regarding child abuse in general. He did agree that it would be unusual, though not impossible, for a fall of seventeen inches as was the height of the chair in question in this case, to cause a serious head injury.

The State called an expert witness in pediatrics with a specialty in child abuse cases in rebuttal who testified that he disagreed with the findings of the defense expert and did not see the chronic subdural hematoma as described and demonstrated by the defense expert on the CT or MRI scans of the child taken at the hospital, and in fact testified that he did not find the scans to be consistent with a chronic subdural hematoma. He affirmatively stated that the injury sustained by the child could not have been as a result of the fall as described by Nash, but could have been caused by being struck against a couch, shaken vigorously and slammed into an object, or hit by a car or baseball bat. No one was able to determine specifically what caused the child's injury based on the x-rays. The fall also could have been from a higher distance depending on how mobile the child was at that time.

It was for the jury, as the trier of fact, to resolve the conflicting expert opinions regarding the cause of the child's injuries. Viewing the evidence in the light most favorable to the jury's verdict, and thus assuming that the jury believed the State's experts and discounted the testimony of the defense experts, the evidence is legally

sufficient to support a finding beyond a reasonable doubt that Nash was the perpetrator of the injuries sustained by the child. He was admittedly the only caretaker of the child at the time of the injury. The testimony showed that his explanation of the head injury was inconsistent with a short fall. The child was acting normally up until the injury, and had eaten a cheeseburger earlier in the day.

Even when all the evidence is considered equally in our factual sufficiency analysis, including the testimony of the defense experts, we still must give due deference to the jury's credibility determinations. It was the opinion of the investigator from CPS that Nash had caused the head injury because he had the availability and opportunity to do so. No one told the 911 operator or the EMT that arrived at the scene that the child had fallen. The child's mother stated that the child had bruises from falling from learning how to pull up and that he had hit his mouth on rails at the foot of her bed. Witnesses for Nash testified that he was very upset and crying that day when the child was injured. The witnesses had seen him with his other children and the injured child and he seemed to have a good relationship with them all. The State responded with Nash's former stepdaughter who alleged that Nash had spanked her hard enough to leave bruises repeatedly for the eight years he lived with her, her mother, and her siblings. The State's evidence is not so weak or the defensive evidence so strong as to preclude the jury from finding beyond a reasonable doubt that Nash intentionally or knowingly caused the child's injury. Issues two and three are overruled.

*Ineffective Assistance of Counsel*

Nash complains in his fourth issue that he received ineffective assistance of counsel throughout the trial. Specifically, he complains that his trial counsel was ineffective by not objecting to the State's experts pursuant to rule of evidence 705, by failing to object to the investigator's opinion that Nash caused the injuries, by failing to object to the State's comment on Nash's failure to testify, and by failing to object to the State's closing argument. Nash filed a motion for new trial but did not allege ineffective assistance of counsel in that motion.

*Standard of Review*

To prevail on an ineffective-assistance claim, Nash must prove (1) counsel's representation fell below the objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). In considering an ineffective-assistance claim, we indulge a strong presumption that counsel's actions fell within the wide range of reasonable professional behavior and were motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Thompson*, 9 S.W.3d at 813; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption, a claim of ineffective assistance must be firmly demonstrated in the record. *Thompson*, 9 S.W.3d at 814. In most cases, direct appeal is an inadequate vehicle for raising such a claim because the record is generally undeveloped and cannot

adequately reflect the motives behind trial counsel's actions. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813-14.

When the record is silent regarding trial counsel's strategy, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Robinson v. State*, 16 S.W.3d 808, 813 n. 7 (Tex. Crim. App. 2000). In rare cases, however, the record can be sufficient to prove that counsel's performance was deficient, despite the absence of affirmative evidence of counsel's reasoning or strategy. *Id*.

It is critical that Nash obtain the necessary record in the trial court to rebut the Strickland presumption that counsel's conduct was strategic for purposes of appeal. *Thompson*, 9 S.W.3d at 814; *McCullough v. State*, 116 S.W.3d 86, 92 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). This kind of record is best developed in a hearing on a motion for new trial, or by an application for a writ of habeas corpus. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); *McCullough*, 116 S.W.3d at 92. Without evidence of the strategy and methods involved concerning counsel's actions at trial, the appellate court will presume sound trial strategy. *See Thompson*, 9 S.W.3d at 814. The record is silent as to any trial strategy by counsel. Except as stated above, when the record is silent as to counsel's reason for failing to act in some manner, the appellant fails to rebut the presumption that counsel acted reasonably. *See Thompson*, 9 S.W.3d at 814.

*Expert Testimony*

Nash complains that he received ineffective assistance of counsel because the judge was not asked to make a ruling at the conclusion of the preliminary hearing conducted outside of the presence of the jury prior to the first State expert's testimony and that the testimony should have been excluded because the doctor did not identify the rate of error in the studies on which he relied. However, the rate of error is only one of a list of non-exclusive factors that the Court of Criminal Appeals has recently stated "*could influence* a trial court's determination of reliability." *Laster v. State*, 280 S.W.3d 235, 241 (Tex. Crim. App. 2009) (*citing Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992)) (emphasis added). A finding regarding the rate of error is not mandatory. The testimony would not have been excludable on this sole basis when taken with the entirety of the expert's testimony. Nash does not challenge the admissibility of the scientific testimony on any other basis. Therefore, Nash fails to meet the first prong of *Strickland* on this complaint.

*Opinion Testimony, Comment on Failure to Testify, Improper Jury Argument*

As to the other complaints regarding whether Nash received ineffective assistance of counsel, we find that the record is silent as to any trial strategy by counsel. *See Thompson*, 9 S.W.3d at 814. As such, we do not find that Nash has developed an adequate record to rebut the presumption that trial counsel acted reasonably. We overrule issue four.

**Conclusion**

We find that any error in admitting the photos was harmless. We find that the evidence was both legally and factually sufficient to sustain Nash's conviction. We find that Nash did not receive ineffective assistance of counsel based on the failure to challenge the admissibility of the State's first expert and that the record is insufficient for Nash to overcome the presumption that his trial counsel acted reasonably based on his other complaints. We affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed March 17, 2010
Do not publish
[CR25]